THE GENERAL COMMERCIAL COMPANY, LTD., OF THE UNITED STATES, Plaintiff, v. THE BUTTERWORTH-JUDSON CORPORATION, Defendant.

First Department, December 2, 1921.

Sales — contract for sale of goods to be shipped from foreign country construed — time of essence of contract — strike clause construed to mean that " contract " and not " delivery " was contingent on strikes — submission of controversy — court not permitted to find by inference facts in addition to those stipulated.

Upon the submission of a controversy it appeared from the agreed statement of facts that the plaintiff had contracted in writing to sell and the defendant to buy certain goods to be shipped from the " United Kingdom," " July-August, seller's option," and that the contract also contained the following clause: " This contract is contingent upon strikes, fires, pestilence, riots, war, rebellion and other causes beyond our control." Defendant wrote to the plaintiff on September first as follows: " Any quantity called for by said contract not shipped by the end of August, 1920, is hereby cancelled," and under said letter refused to accept any further goods under the contract. It appeared that the delay in further shipments in July and August and beyond the first of September was caused by strikes at the German works of plaintiff's suppliers.

Held, that the " contract " and not the " delivery " was contingent upon strikes, and that time was of the essence of the contract;

That, therefore, the defendant had the right to cancel the contract on the first of September, so far as goods had not at that time been shipped, and was not obliged to accept any of the goods shipped after that date.

A submission of a controversy is strictly limited to the consideration of questions of law arising upon an agreed statement of facts and the court is not permitted to find by inference any other facts in addition to those stipulated.

Submission of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

*Davies, Auerbach & Cornell* [*Carlyle Keyes* of counsel], for the plaintiff.

*Chadbourne, Babbitt & Wallace* [*Roger B. Hull* of counsel], for the defendant.

Greenbaum, J.:

After stating that plaintiff and defendant are corporations organized under the laws of the State of New York, it is set forth in the submission that on the 22d of June, 1920, the parties entered into a contract in writing which is annexed, wherein the plaintiff agreed to sell and defendant to buy forty tons of napthalene flakes. The written agreement annexed contains the following provision: " We confirm having sold you for shipment from United Kingdom Naptha-lene Flakes," followed by an enumeration of the quantity of the goods, their description, the prices and other details. It also provides as to shipments: " July-August, seller's option," and also contains the following clause out of which the controversy between the parties arises: " This contract is contingent upon strikes, fires, pestilence, riots, war, rebellion and other causes beyond our control."

It is also stated that, after making the contract in question, the parties agreed that continental flakes or flakes of German origin from a United Kingdom port might be shipped under, and in accordance with, the contract, and that on the 1st of September, 1920, the defendant wrote to the plaintiff as follows: " Referring to conversation had with your representative today, we beg to advise that we will accept deliveries of any napthalene shipped during the months of July and August from England, in accordance with the terms of our contract with you of June 22nd. Any quantity called for by said contract not shipped by the end of August, 1920, is hereby cancelled."

It is further stated that " the plaintiff delivered and defendant accepted under the contract 10 tons of napthalene flakes which had been shipped in August, 1920. The defendant, under its said letter of the 1st of September, 1920, * * * refused

to accept any further napthalene flakes under the contract;" that "no further shipment of napthalene flakes was made from the United Kingdom in July or August under said contract;" that "the delay in further shipments from the United Kingdom in July and August and beyond the 1st of September was caused by strikes at the German works of plaintiff's suppliers, which held up consignments of the napthalene flakes sold the defendant by plaintiff herein;" that "such consignments were cancelled by the plaintiff upon receipt of defendant's letter of September 1st, 1920, by the payment of cancellation charges to plaintiff's suppliers."

The submission also states that "defendant claims that time was of the essence of the contract and that it had the right to cancel the contract on the 1st of September so far as napthalene flakes under it had not at that time been shipped from the United Kingdom," and that "plaintiff claims that the strike clause in the contract was brought into operation and extended the delivery until beyond the date of defendant's cancellation."

The submission finally provides that "The plaintiff, in the event that it be determined that defendant's cancellation was wrongful, has been damaged in the sum of $800," and is entitled to judgment for that sum with interest from the 1st of September, 1920; "that if it shall be determined that the defendant's cancellation [of the contract of September 1st, 1920] was right, there shall be judgment for the defendant."

A submission of a controversy is strictly limited to the consideration of questions of law arising upon an agreed state of facts, and the court is not permitted to find by inference any other facts in addition to those stipulated by the parties. (*Dreiser* v. *Lane Co.*, 183 App. Div. 773, and the cases therein discussed.)

The legal contentions of the respective parties are as follows: Defendant contends "that time was of the essence of the contract and that it had the right to cancel the contract on the 1st of September as far as napthalene flakes under it had not at that time been shipped from the United Kingdom."

Plaintiff argues "that the strike clause in the contract

was brought into operation and extended the delivery until beyond the date of defendant's cancellation."

Limited as we are to the facts agreed upon, we find that the contract provides for " Shipment: July-August, seller's option." Unexplained by other provisions in the contract or by extrinsic circumstances, the plain meaning of the contract as to shipment from the United Kingdom is that they must be made not later than August 31, 1920, and that the buyer was not obliged to accept any of the goods shipped after that date.

This brings us to the provision of the contract to which reference has already been made and which will be repeated, " This contract is contingent upon strikes, fires, pestilence, riots, war, rebellion and other causes beyond our control."

That clause unquestionably was inserted for the benefit and protection of the seller and intended to relieve him from performance of the contract in the event of the happening of any of the events described.

It is to be noted that, saving possibly " strikes," the other causes enumerated are of such a nature that they did not contemplate, in the event that any of them happened, that the seller should have a reasonable time after their occurrence to make deliveries, inasmuch as such happenings would likely render performance impossible, or in any event involve such a long delay that delivery within a reasonable time after August thirty-first would be out of the question.

While the situation might be somewhat different in the case of " strikes," yet the failure to provide as to what the rights of the parties would be in such a contingency indicates conclusively that the buyer would have the right to consider the contract at an end as to shipments not made on or before August 31, 1920, without recourse, however, to any claim for damages against the seller.

The agreed statement of facts is that " the delay in further shipments from the United Kingdom in July and August and beyond the 1st of September was caused by strikes at the German works of plaintiff's suppliers," etc.

The parties cite authorities which involve " strike " clauses in contracts. It may be said that from the nature of the question presented the determination in each case depends

largely upon the peculiar facts of the case or upon the phraseology of a given contract.

Thus in *Milliken* v. *Keppler* (4 App. Div. 42), relied upon by plaintiff, there was a clause in a building contract, which involved the erection of a building before a certain named date, to the effect that the date fixed for completion was " contingent upon strikes and boycotts."

The only question there raised was whether the " strikes " referred to in the contract were limited to strikes in the builders' factory, or embraced strikes of outside concerns with which they had made subcontracts to supply them steel work which entered into the construction of the building. The court construed the contract as not limiting the strike contingency clause to the builders' shops, but including " any strike " which had a legitimate tendency to retard the builders, and held that the delay thus occasioned, accordingly extended the time for completion.

It is evident that the strike clause contingency in that contract could only have been intended to protect the builders from the time limit for completion contained in their contract. The idea that such a delay would terminate the performance of such a contract would be preposterous, and, of course, was not even hinted at in the opinion in the *Milliken Case* (*supra*), which is, therefore, inapplicable to the facts in this case.

In *Fish* v. *Hamilton* (112 Fed. Rep. 742), also relied upon by plaintiff, the contract contained under the caption, " Delivery: December, '98 and January, '99," the following words: " Barring fires, strikes and other unavoidable casualties." The court decided that the contingency as to strikes, etc., related only to the term " delivery," and not to the contract generally, in view of the language of that contract; and that the seller was bound to deliver within a reasonable time after the termination of the strike. In the instant case the provision in the contract is that the " contract " and not the " delivery " was contingent upon strikes.

On the other hand, we find in *New Haven Concrete Construction Co.* v. *Shepard & Morse Lumber Co.* (220 Mass. 207; 107 N. E. Rep. 917), in which the contract included the following provision, " All contracts are contingent upon strikes, fires,

breakage of machinery and other causes beyond our control," that the subject of the contract was lumber which the defendant was unable to deliver because of the destruction of his mill by fire. The court held: " the agreement is not an absolute contract by which the defendant agreed to furnish the flooring to the plaintiff, but was subject to certain conditions, including the condition that the contract was contingent upon fires; that is to say, the defendant was excused from performance in the event of the happening of any of the contingencies set forth in the contract (citing cases). The effect of this clause was not to extend the time of performance beyond the time limit, but wholly to relieve the defendant from the obligation to furnish the flooring called for by the contract (citing cases)."

In the case of *Metropolitan Coal Co.* v. *Billings* (202 Mass. 457; 89 N. E. Rep. 115) the contract, the subject-matter of which was coal to be delivered before November first, contained a contingency clause as to strikes. It appeared that the plaintiff was prevented by reason of a strike from supplying the coal before the date fixed. The court held: " The effect of the strike was not to extend the defendant's right to delivery beyond the time limit, but, according to the proper construction of the contract, to relieve the plaintiff from the obligation which it would otherwise have been under and to render it liable only for its failure to deliver to the defendant within the time limit his due proportion of such supplies as it had on hand."

Williston on Contracts, in section 1968, discussing the effect of contracts, which were contingent upon strikes and other unforeseen casualties, says: " It has become common for manufacturers and others to insert in their contracts clauses relieving them from liability in case of strikes and other unforeseen casualties. The words of these clauses are not identical, and it can only be said that while such agreements are legal, it is essential to prove that a strike or casualty within the terms of the clause in question was the actual cause of non-performance; and also that unless the clause clearly indicates that increased difficulty or enhanced prices (as distinguished from impossibility) due to the casualties in question shall afford an excuse, they will not be held to do so, at least unless extreme in degree. If such a clause

becomes operative and excuses the promiser from performance, the excuse has been held not merely temporary, operative only while the casualty continues, but a permanent excuse for non-performance, unless the contract provides that delay only shall be excused."

There must be judgment for the defendant, with costs.

CLARKE, P. J., DOWLING, PAGE and MERRELL, JJ., concur.

Judgment ordered for defendant, with costs. Settle order on notice.