## JOHN J. MEIER & CO. v. SCHMIDT & ZIEGLER, LTD.

——

(December 16, 1929. Opinion and Decree.)
(January 27, 1930. Rehearing Refused.)
(March 12, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

——

Monroe & Lemann, and Nicholas Callan, of New Orleans, attorneys for plaintiff, appellee.

Dufour, Rosen & Kammer, of New Orleans, attorneys for defendant, appellant.

HIGGINS, J. Plaintiff entered suit against defendant for the breach of a contract for the sale of 1,200 bags of sugar. The amount sought to be recovered— i. e., $1,824.23—is the difference between the contract price and the amount for which the sugar was resold by plaintiff, after defendant refused to accept delivery because of delay in shipping the sugar. Defendant denied liability. There was judgment in favor of plaintiff, and defendant has appealed.

The written contract between plaintiff and defendant consists of six telegrams, which passed between C. W. Wacker Company, at St. Louis, Mo., broker for the seller, and Schmidt & Ziegler, Limited, of New Orleans, La., the purchaser and defendant herein. On September 26, 1923, the broker wired Schmidt & Ziegler, Limited, as follows:

"Offer subject being unsold twelve hundred bags South Down Standard Fine Granulated Sugar nine thirty less to fob Houma Louisiana shipment promised this week option expires Thursday ten AM St. Louis time no brokerage."

On September 27th, Schmidt & Ziegler, Limited, wired the broker as follows:

"Accept twelve hundred Southdown shipment this week wire additional offerings."

Later in the day, on September 27th, the broker wired Schmidt & Ziegler, Limited, as follows:

"J. J. Meyer confirms Twelve Hundred Bags Southdown nine thirty less two fob Houma providing you wire immediately agreeing to accept same if already in transit St. Louis."

Then Schmidt & Ziegler, Limited, wired the broker:

"Will accept twelve hundred Southdown providing Meyer will guarantee shipment this week answer immediately."

The broker then wired to Schmidt & Ziegler, Limited, the following telegram:

"Meier has contract for shipment this week however will not be responsible for any delay wire if satisfactory had hard time to get him accept these terms after the advance of forty five points first thing this morning."

On September 28th, Schmidt & Ziegler, Limited, sent the following telegram:

"Accept twelve hundred sacks Southdown your nite letter twenty seventh."

On September 30, 1923, the Southdown plantation, from which the sugar was to be furnished, was compelled to discontinue operations temporarily on account of a fire, which destroyed a part of its mill. The sugar was shipped as promptly as possible after the fire, on October 23, 1923, and upon the arrival of the sugar in New Orleans defendant refused to accept it on account of the delay.

The evidence shows that the market declined just prior to and on the date of shipment, and, upon defendant's refusal to accept the sugar, plaintiff sold it on the open market at a loss of $1,824.23.

Defendant contends that time was the essence of the contract, and that the delay in shipment justified it in refusing to accept the sugar; that, the statement in the telegram of September 27, 1923, to the effect "Meier has contract for shipment this week however will not be responsible for any delay" is a resolutory condition, and when the fire occurred, and delivery was delayed beyond one week, both parties to the contract were relieved from their obligations under it; and, in the alternative, that, if the plaintiff had the right under the above-quoted provision to delay delivery at his own will, and the buyer at all times was obligated to accept delivery of the sugar, then the clause is a potestative condition, which strikes the whole contract with nullity.

Plaintiff contends that the above-quoted provision is neither a resolutory nor potestative condition, but a clause which suspended performance during the period of plaintiff's inability to make delivery; and, secondly, that, as defendant made demand for shipment of the sugar after having been informed of the fire, and in no way signified any intention of receding from the contract, defendant thereby waived any breach which would have entitled it to recede from the contract, and was therefore obligated to take the sugar when shipped.

The first inquiry is: What is the meaning of the sentence: "Meier has contract for shipment this week however will not be responsible for delay." It appears that this language contains two provisions: First, "Meier has contract for shipment this week," a restrictive clause in favor of the buyer, defendant herein, as to the time within which the shipment must be made; and, secondly, "however will not be responsible for any delay," a restrictive clause in favor of the seller, plaintiff herein, releasing it from any liability for damages which the buyer, defendant herein, might sustain in the event shipment was not made within the time provided by the contract—i. e., "this week." This provision in the contract is therefore neither a resolutory nor a potestative condition. C. C. arts. 2024, 2045. Moreover, this provision would not justify plaintiff in extending the time of the performance of the contract, even in the event the cause of the delay was beyond its control.

Time was of the essence of the contract by its express provisions, and also from the very nature of the contract; i. e., a merchant's contract, covering a commodity the market price of which is subject to change often and quicky. As the plaintiff failed to ship the sugar "this week," defendant was under no obligation to take it thereafter, because the time limit in the contract for shipment had expired. When the breach of the contract occurred by plaintiff's failure to ship the sugar within the time agreed upon, defendant was then compelled to elect either to recede from the contract or insist upon its performance.

The general principle of law applicable is concisely expressed by Judge Provosty in Des Allemands Lumber Co. vs. Morgan City Timber Co., 117 La. 18, 41 So. 332, 338, in the following language:

"Naturally one cannot claim the benefits of a contract, insisting upon its performance, and at the same time ask its dissolution. When a breach occurs, an election must be made then and there between asking for a dissolution and insisting upon further performance, and the choice is made once for all."

The record convinces us that the defendant chose to have plaintiff deliver the sugar, after being informed of the plaintiff's inability to make shipment "this week" on account of the fire at Southdown plantation.

It appears that Harry L. Laws & Co., representing the Southdown plantation as brokers, originally sold the sugar in question to plaintiff, and the sugar remained at the plantation for the purpose of being refined, and was there at the time that plaintiff sold it to defendant. Mr. Henry Martin, manager of Harry L. Laws & Co., testified as follows:

"Q. Did you so explain that situation to Schmidt & Ziegler, or to the representative of Schmidt & Ziegler?

"A. My recollection is that they discussed about possible delays in shipment. They must have come in about the time I wrote that letter to John J. Meier & Co.

"Q. Did Schmidt & Ziegler acquiesce in the situation that then existed?

"A. I cannot say that they acquiesced, but they were urging us to ship it. * * *

"Q. They still wanted the sugar?

"A. Yes, sir.

"Q. And they continually urged you to ship the sugar?

"A. Yes, for some period, but I cannot say how long that kept up.

"Q. And they never did at any time instruct you not to ship?

"A. Not that I know of."

Mr. Charles W. Ziegler, Jr., manager of the defendant, who handled the transaction for it, testified as follows:

"Q. I am talking about after September 28th. I understood that you went to see Mr. Martin and spoke with him with respect to having the sugar shipped preferentially?

"A. I don't remember exactly what was discussed, but I asked him if he had any record of sugar I bought from John J. Meier & Co., and I said if he could expedite the matter I would be glad. * * *

"Q. Did you advise them not to ship the sugar after you learned these facts?

"A. No, sir."

The record convinces us that this conversation between Mr. Martin and Mr. Ziegler occurred on Monday, October 1, 1927, the fire having taken place on Sunday, September 30, 1927, and thereafter defendant did nothing to change the status quo until the sugar arrived when it refused delivery.

In the case of Grapico Bottling Works vs. Liquid Carbonate Co., 163 La. 1058-1063, 113 So. 454, 456, the court said:

"On the other hand, while there was considerable delay in making delivery, according to the contract as modified, yet, when delivery was not made in April, to which time it had been advanced, plaintiff did not seek to cancel the contract, but, to the contrary, still desired it to be performed, and as late as June 12, 1920, telegraphed defendant, as we have seen, to fix some exact date when delivery would be made, and when, on June 16, 1920, defendant wrote plaintiff that it expected to ship the machine on June 29, 1920, plaintiff did not seek to cancel the contract, and made no attempt in that direction, until July 1, 1920, at which time defendant had, in good faith, loaded the machine on the car for shipment, and had the bill of lading signed. Under these circumstances, we think that plaintiff should have accepted delivery, and is not entitled to a rescission of the contract and to the recovery of the $450 paid by him, but should perform his part of the agreement." See, also, Tremont Lumber Co. vs. Robinson Lumber Co., 160 La. 256, 107 So. 101.

As the defendant insisted upon performance of the contract after the breach, and at no time notified plaintiff that it considered the contract dissolved, the defendant was obligated to accept the sugar when delivered. The damages claimed were the direct result of defendant's refusal to accept delivery, and plaintiff is entitled to recover.

For the reasons assigned, the judgment of the district court is affirmed.