HASKINS TRADING CO. v. S. PFEIFER & CO.

(October 20, 1930. Opinion and Decree.)

Feitel & Feitel and Dresner & Dresner, of New Orleans, attorneys for plaintiff, appellee.

Louis L. Rosen, of New Orleans, attorney for defendant, appellant.

JANVIER, J. By contract in writing the Haskins Trading Company, plaintiffs, agreed to sell to S. Pfeifer & Company, defendants, and to deliver to them in New Orleans a certain quantity of "Mexican' Black Eye Peas."

The contract stipulated for the shipment of the merchandise "immediately from Mexican interior point" and for payment on arrival and inspection in New Orleans.

On the margin of the document, printed in rather bold type, appeared the following:

"All agreements are contingent upon strikes, delays of carriers and other causes unavoidable and beyond our control. All prices subject to further confirmation."

It is admitted that the merchandise left the point of origin, which was a Mexican interior point, at a time sufficiently proximate to the date of the contract to comply with the stipulation for immediate shipment.

However, when the peas arrived at the Mexican border on July 29, 1925, it was learned that the Mexican Government had issued an embargo against the exportation of black-eye peas and therefore the shipment could not go forward and was unloaded from the railroad car and placed in storage.

It is admitted that, at the time of the execution of the contract, neither party thereto was aware of the existence of the embargo.

On or about August 12th the embargo was withdrawn, the peas were again loaded into a freight car and on August 15th the shipment crossed the border and entered the United States, after which, in due course and with reasonable dispatch, it arrived in New Orleans ·on August 26th, where it was tendered to defendant on August 27th.

In the meantime, at some time prior to August 12th—probably on or about August 11th—defendants, purchasers under the contract, having learned of the delay caused by the embargo, had notified plaintiffs, sellers under the contract, that, since the arrival of the peas would be delayed, they, defendants, would refuse to accept delivery on arrival.

On receipt of this notice, plaintiffs protested in writing and on August 12th advised that the embargo had been lifted, that the .delay had been caused by mat-

ters beyond their control, and that delivery would be tendered as soon as the shipment arrived.

Other correspondence followed, but, as we have already stated, when delivery was tendered on August 27th, it was refused.

Thereupon the plaintiffs sold the peas in the open market and thereafter brought this suit for the loss sustained by them, to-wit: the difference between the contract price and the price obtained in the market.

It is conceded that the cause of the delay was one of those contingencies contemplated by the marginal reservation to which we have referred and that neither party was in any way responsible therefor, but there is a wide divergence of opinion between the parties as to the effect of the said reservation and as to their respective rights thereunder.

Plaintiffs, the sellers, maintain that the occurrence of one of the events mentioned in such a clause merely suspends the operation of the contract and that, where, as here, performance is temporarily rendered impossible, the matter remains in statu quo until the termination of that condition, which, for the time being, made performance impossible and that thereafter the parties shall still have a reasonable time within which to comply with their obligations—in this case, to deliver the peas at New Orleans.

Defendants, the purchasers, with equal vehemence, declare that the marginal reservation in question was not intended to give to the sellers the right to force the buyers to accept delivery after the delay, but was intended merely to exempt the sellers from liability for damages for failure to comply with the contract to deliver within a reasonable time, for which damages liability would otherwise result under Civil Code art. 2486, which reads as follows:

"In all cases, the seller is liable to damages if there result any detriment to the buyer, occasioned by the non-delivery at the time agreed on."

It is to be noted that the contract fixed no time for delivery, it being limited to the requirement that shipment be made "immediately." The parties agree that, in such a situation, there is written by law into the document the provision that the delivery shall take place within a reasonable time after shipment. In this, of course, they are correct.

"When no time is specified for delivery of goods, a reasonable time is understood." H. T. Cottam & Co v. Moises, 149 La. 305, 88 So. 916, 917.

See, also, Wilson v. Broom, 6 La. Ann. 381; Pratt v. Craft, 19 La. Ann. 131; Bartley v. City of New Orleans, 30 La. Ann. 264; Thompson v. Woodruff Co., 7 Cold. (Tenn.) 401.

It is also not in dispute that, in determining what is a reasonable time, consideration should be given to what is the usual delay experienced by persons engaged in the same or a similar kind of business in making shipments between the same or similar points.

Plaintiffs insist that, if we apply this test, it will appear that, even leaving out of consideration the fourteen or fifteen days' delay resulting from the embargo, the arrival here on August 26th was within a reasonable time after the shipment left the point of origin on July 27th, which, as we have already found, was within proper time after the making of the contract; in other words, that, even if there had been no embargo, thirty or thirty-five days would not have been an

·unusual or an unreasonable time for such ·a freight movement.

An examination of the evidence, how-.ever, leads us ·to the view that counsel's .claim in this regard is not borne out, and that the usual time between point of origin and point of destination between the same or similar .points is about fourteen or fifteen days, where no embargo or other unusual event interferes.

Thus it appears that, except for the ,embargo,. the purchasers ⟨probably would .have received their peas on about the 11th or 12th of August, ·instead of on the 27th, ,more than two weeks ·later.

' The record shows that the market price of peas such as these with which we 'are ,now concerned maintains a fairly firm .tone during the first two or three weeks ,of August, but that usually during the last .ten days of that month it breaks badly, ·due to the influx of similar peas from .California or other Western points.

Where such a situation exists, it is, of ·course, of the utmost importance to a purchaser that his shipment reach him as soon as possible. ˙ Time is of the es-'sence of the contract. Norrington v. Wright, 115 U. S. 188, 6 S. Ct. 12, 29 L. Ed. 366; Shelby Mills, Inc., v. Nami, 1 La. App. .116; Kinsell & Locke, Inc., v. Kohlman, 12 La. App. 575, 126 So. 257.

Where time is of the essence of a contract, the purchaser cannot be compelled to accept delivery of· merchandise after .the expiration of the time fixed, nor after a reasonable delay, when no time limit .is set forth.

Unless, then, by the marginal stipulation, there is reserved to the sellers the right to deliver after a reasonable time has elapsed, that right is lost, and the purchasers cannot be forced to accept and pay for the article in question.

What, then, is the proper interpretation .to be placed upon the st.pulation? In General Commercial Co., Ltd., v. Butter-.worth-Judson Corp., 198 App. Div. 799, 191 N. Y. S. 64, 65, the contract out of which ·the controversy arose contained a stipu-.lation similar to that which is involved .here. There it read as follows:

· "This contract is contingent upon strikes, fires, pestilence, riots, war, rebellion, and other causes beyond our control."

There, as here, the question was whether the stipulation was intended merely to shield the seller from liability in the ·event of failure to deliver, or was intended to hold the contract in suspense pending settlement of the strike. The court held:

"That clause unquestionably was inserted for the benefit and protection of the seller and intended to relieve him from performance of the contract in the event of the happening ·of any of the events described."

It is argued here by defendants that as soon as the embargo was learned of they were within their rights in assuming that the contract was at an end; in other words, that the entire agreement was to be performed only if certain named contingencies did not take place prior to performance, and that, as soon as one of these contingencies did take place, the contract was immediately and automatically terminated, without liability in either party. Such an interpretation can be placed upon the stipulation, since it will be noted that the entire agreement is made contingent upon such an event as happened. If the delivery only had been referred to in the stipulation, it might well

be argued that it was contemplated by the parties that the happening of one of the events mentioned or referred to should leave the contract in full force and should merely suspend delivery; but is is rather difficult to adopt this interpretation in view of the fact that the whole agreement and not only the delivery is made to depend on the non-occurrence of one of those events. General Commercial Co., Ltd., v. Butterworth-Judson Corp., 198 App. Div. 799, 191 N. Y. S. 64; Fish, Jr., & Co. v. Hamilton (C. C. A.) 112 F. 742.

Defendants further claim that, since they had contracted to sell and deliver to others the peas which were the subject of the contract, it was imperative, as soon as they learned that a delay must inevitably result from the embargo, that they protect themselves against possible liability for failure to deliver to their vendees by the purchase in the open market of other peas. They cite Williston on Sales (2d Ed.), sec. 661-B, p. 1660, in which, with reference to the rights of a purchaser, we find the following:

"* * * If immediate action is necessary to protect him from loss he could not be required to take the chance that perhaps the impossibility may cease before his interests are injuriously affected."

Without finding it necessary to comment on whether they were within their rights, in immediately acting upon the assumption that the embargo would unduly delay the arrival of the shipment, we express the view that, as soon as that delay existed for so long a time that to wait longer would have placed them in peril of liability to those to whom they had contracted to deliver, they were then justified in protecting themselves as they did.

Bearing in mind that the stipulation in question was prepared and inserted in the contract by the vendors—that is to say, the plaintiffs here—and therefore should be interpreted, if ambiguous, against them, and viewing the contract from the point of view of the parties at the time it was made; we adopt the view that there was nothing more intended by the stipulation than that the sellers should not be liable for failure to deliver, or for delay in delivering, if caused by one of the contingencies named.

It would be most unfair to require that a purchaser, unless he expresly and unequivocally agreed thereto, should be indefinitely held under the obligation to accept a purchase of which he is in immediate need, but which, for all he knows, may be months in arriving.

We think that the situation here is somewhat analogous to that which was presented in the matter of John L. Meier & Co. v. Schmidt & Ziegler, Ltd., 12 La. App. 431, 125 So. 191, except that there it appeared that, after the delay which would have created the right to refuse to accept delivery, the purchaser, by its actions, reinstated the contract and thereafter could not be heard to say that it had acted on the default and did not intend to accept delivery.

The judge a quo was of the opinion that the stipulation in question had the effect of suspending the operation of the contract until the termination of the event which made delivery impossible. In this we think he was in error.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, annulled, avoided, and reversed, and that there now be judgment in favor of the defendants and against plaintiffs, dismissing the suit at plaintiffs' cost.