### DANT & RUSSELL, Inc., v. GRAYS HARBOR EXPORTATION CO., Inc.

No. 21137.

District Court, W. D. Washington, N. D.

Feb. 8, 1939.

Bayley & Croson, of Seattle, Wash., and Allen H. McCurtain, of Portland, Or., for plaintiff.

McMicken, Rupp & Schweppe and J. Gordon Gose, all of Seattle, Wash., for defendant.

BOWEN, District Judge.

The contracts all contain a strike clause providing that " * * * the seller is not liable for delay or nonshipment or for delay or nondelivery if occasioned by * * * strikes, lockouts, or labor disturbances * * *." But the seller is given an option to make delayed delivery by the following contract provision: "Buyers agree to accept delayed shipment and/or delivery when occasioned by any of the aforementioned causes, if so required by the seller, provided the delay does not exceed thirty days."

The contracts also contain the following language: "The terms of this contract are herein stated in their entirety, and it is understood that there is no verbal contract or understanding governing it."

This court is not advised of any controlling Washington state authority upon the proper construction of these particular contract provisions.

In the case of Normandie Shirt Co. v. J. H. & C. K. Eagle, 238 N.Y. 218, 144 N.E. 507, 508, 35 A.L.R. 714, a contract for the sale of shirting called for "delivery June–July–Aug.–Sept." and contained a strike clause providing that " * * * strikes * * * preventing the delivery of merchandise in accordance with the terms of this contract, shall absolve the seller from any liability hereunder." And the New York court held that a strike preventing delivery during the months specified absolved the seller not only from liability for delay but also "from any liability," which would include liability for failure to deliver at all.

Concerning contracts like that involved in that case absolving the seller from any liability for failure to deliver due to frustration of the contract by labor strikes, the

New York court (at pages 510, 511 of 144 N.E.) said:

"When deliveries according to contract have been prevented, by strikes of a substantial nature, or other like excepted causes, the party is relieved altogether, not only from liability for failure to make such deliveries, but also from the obligation to make them thereafter. As to the installments not delivered according to contract, the contract is terminated. Whether this termination would extend to separable installments falling due after the strike, which it would then be within the capacity of the seller to deliver within the contract term, we do not need to consider. At least as to the installments falling due within the period of disability, the obligation would be ended. As to such installments, if it be the intention of the parties that the strike clause is merely to delay delivery, so that goods which could not be made or delivered because of a strike must be subsequently made or delivered within a reasonable time thereafter, the contract must clearly so provide. [Citing cases.] * * *

"The cases referred to by the respondent will be found to have clauses in the contracts involved clearly indicating that delivery was to be delayed, and made up subsequently to the termination of the cause of delay. We conclude, therefore, that this clause entitled the defendant to terminate the contract on September 30th, and to refuse to deliver any goods thereunder of which delivery had been prevented by strikes. In other words, it could not deliver by September 30th the goods which the plaintiff had ordered, by reason of the strike. The contract as to these undeliverable goods was therefore at an end, and the defendant was not obliged to make them up and to deliver them later. This clause did not call for a later or postponed delivery."

To the same effect are the following cases involving various force majeure clauses: Black & Yates, Inc., v. Negros-Philippine Lumber Co., 32 Wyo. 248, 231 P. 398, 37 A. L.R. 1487; Kunglig Jarnvagsstyrelsen v. National City Bank, 2 Cir., 20 F.2d 307; Atlantic Steel Co. v. R. O. Campbell Coal Co., D.C., 262 F. 555; Edward Maurer Co. v. Tubeless Tire Co., 6 Cir., 285 F. 713; Indiana Flooring Co. v. Grand Rapids Trust Co., 6 Cir., 20 F.2d 63.

Under similar circumstances, and in the absence of a contract option to the seller to make later delivery, the buyer likewise is absolved from any liability to take delivery after expiration of the contract period of delivery. General Commercial Co. v. Butterworth-Judson Corp., 198 App.Div. 799, 191 N.Y.S. 64; Haskins Trading Co. v. S. Pfeifer & Co., 14 La.App. 568, 130 So. 469.

Does the liability exemption provision of the contracts in suit absolve the defendant seller from liability to deliver after the contract delivery period? The language of the contracts in question here is: "* * * the seller is not liable for delay or nonshipment or for delay or nondelivery if occasioned by * * * strikes * * *." It is to be noted in this strike clause that the word delay occurs in connection with the statement of nonliability for both nonshipment and nondelivery, and further that the seller is not to be liable for nondelivery as well as nonshipment. The provision as to delay, however, is not that the seller is not to be liable for delay *in* shipment nor for delay *in* delivery, and is not confined to delay alone, but the provision is that the seller is not liable for delay *or* nonshipment *or* *nondelivery*. Obviously these words are not synonymous, and by the use of the word "nondelivery" some meaning in addition to that meant by "nonshipment" must have been intended. As no sale can be completed without delivery, conditionally absolving the seller from liability for nondelivery in a sales contract is equivalent to freeing the seller of his obligation to perform the sales contract when the nonliability-for-nondelivery condition happens. When applied to the question of this defendant seller's liability, there is no substantial difference in meaning between the phrase "* * * the seller is not liable for * * * nondelivery if occasioned by * * * strikes * * *" as used in the contracts in suit, and the phrase "* * * strikes * * * preventing the delivery of merchandise in accordance with the terms of this contract shall absolve the seller from any liability hereunder" as used in the contract involved in the Normandie Shirt Co. case, supra.

The provisions for the contract delivery periods in the Normandie Shirt Co. case and in this case are similar, and those provisions are not ambiguous nor uncertain in either case. If the seller was not, under the strike clause absolving "the seller from any liability" in the Normandie Shirt Co. case, obligated to make delivery during a reasonable time after the cessation of the

strike, then as regards the portion of the contract period which expired during the strike the defendant seller in this case is not obligated for a reasonable time or any time after the strike to make delivery, because excused therefrom under the strike clause here providing that " * * * the seller is not liable for * * * nondelivery if occasioned by * * * strikes, lockouts or labor disturbances * * *." Defendant is not, therefore, obligated under the contract provisions here to deliver after the strike any of the logs which according to the contracts should have but for the strike been delivered during it. The proof does not show that the strike period ended before the expiration of the contract delivery period, and the court understands any contention about that raised by the pleadings was abandoned at the trial.

Plaintiff's contention that by a custom pertaining to the trade defendant is obligated for a reasonable time after the termination of the strike to make delivery is not tenable, because the contract terms above noticed relating to time of delivery and the effect of the strike clause thereon are so clear and unmistakable on the point affected by the alleged custom that to apply the custom, if one existed, would obviously violate the express agreement of the parties relating to nonliability of the seller for nondelivery. Under the law, custom cannot be employed to produce that effect, nor at all, where, as here, there is no ambiguity or uncertainty as to the provisions or meaning of the contract sought to be explained by the alleged custom. In this case custom is at least impliedly, if not expressly, excluded by the terms of the contracts themselves. Thus one of the necessary conditions for permissible application of custom is lacking. 17 C.J. 508 (Sec. 77); Keen v. Swanson, 129 Wash. 269, 224 P. 574; Moore v. United States, 196 U.S. 157, 25 S.Ct. 202, 49 L.Ed. 428; The Albisola, D.C., 6 F.Supp. 392.

In this connection, however, the court is not convinced that the proof is sufficient to establish the custom relied upon by plaintiff even if proper proof of it would do no violence to the terms of these contracts. Two of the officials of plaintiff company testified in effect to the existence of a custom calling for delivery within a reasonable time after the strike, but two of defendant's officers or agents denied any knowledge of such a custom. Other witnesses were not in entire accord as to the existence

of such a custom nor as to certainly what it was. There is here no convincing evidence free from ambiguity, uncertainty or variability establishing a uniformly prevalent and universally observed custom calling for delivery within a reasonable or certain time after the expiration of the contract period or the strike impediment, as is required by such authorities as Washington Brick, Lime & Sewer Pipe Co. v. Anderson, 176 Wash. 416, 29 P.2d 690.

Plaintiff further contends that, by performing other similar contracts (some with plaintiff and some with third parties) and by a course of inaction as to the contracts in suit, defendant has placed a practical construction on and has recognized the binding effect of these contracts as contended for by plaintiff. But on this phase of the case the proof again does not convincingly support plaintiff's contention. The evidence on this point is not free of conflict, and all of it is of a very general nature, but such as there is leads to the conclusion that the attending circumstances were, in the case of the other performed contracts, different from the circumstances which would have attended performance by defendant of the contracts in suit. Unsettled freight rates following the strike and the fact that the freight rates actually paid by plaintiff in substitute performance and included in plaintiff's alleged damage were higher than those applicable before the strike are examples of such different attending circumstances. Likewise, the court is not convinced that defendant's course of inaction respecting performance of the contracts now in question was of such character as to indicate that defendant before suit placed on the contracts a construction different from that so placed by it after suit, especially in view of the contract option to the defendant seller to make delayed delivery within thirty days after the strike.

Regardless of the effect of the evidence just noted, this issue on the asserted applicability of the rule of practical construction may be disposed of by a consideration of the law and the controlling evidence concerning that issue. The proper application of that rule presupposes the existence of two necessary conditions, namely, ambiguous or uncertain contract provisions, and a long course of explanatory conduct thereunder by the parties. Lowrey v. Hawaii, 206 U.S. 206, 27 S.Ct. 622, 51 L.Ed. 1026; Brooklyn L. Insurance Co. v. Dutcher, 95 U.S. 269, 24 L.Ed. 410. But here

those conditions are not present. The contract provisions in question, as above pointed out, are not ambiguous or uncertain; and the conduct of defendant respecting other contract performance advanced by plaintiff to aid construction of those provisions was not a long course of conduct, but was with reference to certain contracts performed by defendant within and during a relatively short period after the same strike which is involved in this case. Defendant's course of inaction as to the contracts in suit was for about the same period or less, during which time as to which contracts defendant did nothing and acquiesced in nothing done by plaintiff inconsistent with defendant's delivery delay option or present position. Under that option defendant had the privilege for thirty days after the strike to deliver or not as it saw fit, without incurring liability for the consequences of not, during the life of the option, disavowing intention to exercise it. In that, there is no basis for estoppel by inconsistent conduct.

This case, therefore, is not one for the proper application of the rule of practical construction of contract by the conduct of the parties. Amherst Inv. Co. v. Meacham, 69 Wash. 284, 124 P. 682; Lesamis v. Greenberg, 9 Cir., 225 F. 449; Brown & Sons Lumber Co. v. Louisville & N. R. Co., 6 Cir., 82 F.2d 94; In re Chicago & E. I. R. Co., 7 Cir., 94 F.2d 296, 297.

The decision of this court is that plaintiff take nothing by its complaint and that the action be dismissed, with costs to defendant. Findings, conclusions and judgment may be settled upon notice or stipulation.