CHARLES SUESSEL et al., Plaintiffs, *v.* J. EARLY WOOD & Co., INC., Defendant.

City Court of New York, New York County, December 21, 1942.

*Abraham Chaice* for plaintiffs.

*David Ray Bernstein* for defendant.

BYRNES, J.  This is an action by the buyers against the seller to recover damages for breach of a contract to ship and deliver 40,000 pounds of caustic soda.  The defendant has interposed a counterclaim based upon the alleged failure of the buyers to accept delivery.

The relevant facts are as follows:  On January 13, 1942, in the morning, at New York city, plaintiffs entered into an agreement in writing with defendant whereby plaintiffs bought from the defendant one carload of caustic soda, 40,000 pounds, at a stipulated price f. o. b. San Francisco, California, to be shipped to Banco Nacional De Mexico, Nuevo Laredo Branch, Laredo, Texas.  The agreement provided for shipment on January 13, 1942.  Terms of payment were $500 in cash, balance against bill of lading in New York.  The buyers delivered their check for $500 to the seller on January 13th, but not until after four o'clock in the afternoon.  As this was after banking hours the parties did not consider that payment was made in time for shipment on January 13th and the merchandise was actually shipped January 14th, the buyers agreeing to shipment on that date.  Therefore, although time is presumptively the essence of a commercial contract (cf. *Hollander* v. *Lignum Chemical Works,* 205 App. Div. 251, affd., 237 N. Y. 511; *General Commercial Co. Ltd.* v. *Butterworth-Judson Corp.,* 198 App. Div. 799), failure to ship until the day after the agreed date did not in this case constitute a breach of contract by the seller, and in any event the buyers did not at any time reject the merchandise on the ground of failure to make timely shipment, but on another ground hereinafter stated.

The merchandise was delivered to Laredo, Texas, consigned not to the bank designated in the agreement but to the order of Seaboard Chemical & Supply Co., also of Laredo, Texas. The buyers claim that this divergence from the agreement constituted a breach of contract on the part of the seller, a failure

to deliver the goods in conformity with the agreement. However, a bill of lading covering the goods was tendered to the agent of the buyers in New York on January 17, 1942. This bill of lading, a uniform order bill of lading, showed that the goods were "Consigned to order of Seaboard Chemical & Supply Co.," Laredo, Texas. It was duly endorsed in blank by Seaboard Chemical & Supply Co., and also by the seller, J. Early Wood & Co., Inc., and was of course freely negotiable. The buyers could have had the bill of lading on paying the balance due for the merchandise in accordance with the terms of payment provided in the contract. The seller was told by the buyers' agent, on January 17th, to return with the bill of lading on January 19th; he did return but was requested to come back again on the 20th of January at the office of the Pan-American Trust Company, and at that time and place the Pan-American Trust Company, acting for the buyers, rejected the bill of lading and refused payment on the ground that the bill of lading was not in conformity with the contract.

As above stated, the buyers could have secured possession of the bill of lading on January 17th and thus of the merchandise by merely paying the balance due. The bill of lading which was tendered to them, in the form in which it then was, duly endorsed in blank by the consignee of the merchandise, and also by the seller, was sufficient to transfer possession of the merchandise and to accomplish in full and with complete effectiveness the purpose of the contract. This negotiable bill of lading, so endorsed and placed in the hands of the buyers, with the goods shipped where they were required by the contract to be shipped, to Laredo, Texas, constituted delivery in accordance and compliance with the contract. Possession of such bill of lading gave the buyers possession of the goods at the same time and at the same place as if the goods had been consigned to Banco Nacional De Mexico.

In *Hyman* v. *Hullman* (205 App. Div. 119) the trial court had dismissed the complaint in an action by the seller of goods for failure of the purchaser to accept them. The trial court was of the opinion that there had not been a proper delivery because the bill of lading which was received in evidence was non-negotiable. The agreement in that case, as in the case in hand, provided for payment against the bill of lading. McAvoy, J., writing for the Appellate Division, which reversed the trial court, said: "The goods were shipped according to the terms of the order, and an unindorsed bill of lading was presented to defendant." He also said: "Since no credit was to be given or

had been provided for by the terms of the agreement, the duty of payment upon the part of the buyer was simultaneous with the duty of the seller to deliver, and since the proof showed that he was at the place of delivery of the goods, and that the bill of lading was in his own name, by delivery of the bill and its assignment, or together with an order for the transfer of the goods to the buyer, the right of possession could have been put into the hands of the buyer. * * * Such a situation may be compared to the arrival of the goods in the personal care or possession of the seller and without any bill of lading whatever. He could in the one case, as well as in the other, deliver the possession which he himself had to the buyer without negotiation of any shipping document. It was, therefore, an erroneous conclusion that he failed to comply with his contract because he did not deliver a negotiable bill of lading to the buyer." This reasoning is applicable here, for " the right of possession could have been put into the hands of the buyer " by mere delivery of the negotiable bill of lading, already endorsed in blank, which put the buyers in exactly the same position, in every respect, as if the goods were originally consigned to Banco Nacional De Mexico. It seems to me that there was a complete delivery of the goods in full compliance with the contract. As stated above, the contract was " f. o. b. San Francisco, California." Therefore, except for the seller's reservation of property in the goods as security for payment of the purchase price, title passed at San Francisco, the point of shipment, from the seller to the buyers, at the moment of delivery to the carrier, and this is true even though the bill of lading be made out to the seller. (*Standard Casing Co., Inc.*, v. *California Casing Co., Inc.*, 233 N. Y. 413; cf. *Neumeyer* v. *Hooker,* 131 App. Div. 592, 597, affd., 199 N. Y. 591.)

I am unable to see that the defendant in this case breached the contract of sale in any substantial respect. The complaint is dismissed and the defendant may have judgment on the counterclaim.

I find that the defendant suffered the following damages: The difference between the contract price, $1,950, and the resale price, $1,287.13, which is $662.87; freight paid for the shipment of the goods from San Francisco to Laredo, Texas, $401; expenses of telegraphing and other expenses incidental to the shipment, $50; brokerage for resale, $80; from these items, totaling $1,193, should be deducted the sum of $500, which defendant was originally paid. Defendant is, therefore, entitled to judgment in the sum of $693.87.

The clerk is directed to enter judgment in favor of the defendant against the plaintiffs, on the counterclaim, in the sum of $693.87, and dismissing the complaint on the merits. Execution is stayed for ten days after service of notice of entry of judgment. Sixty days to make a case.