ST. PAUL, J.
 

 On February 11,1924, plaintiffs contracted to construct a high school for defendant for the total price of $772,133.60, and to deliver the same on February 7, 1925, “no allowance to be made for bad weather,”
 

 Adding $5,269.88 for extras, and deducting $3,308.74 foi' certain allowances, about which there is no dispute, the net contract price amounted to $774,094.74, on account of which plaintiffs have received $753,607.83, leaving a balance due them on the contract price of $20,486.91, which they claim in this suit, and over which there is no controversy.
 

 I.
 

 In addition to the balance aforesaid, plaintiffs also claim: (a) $1,565 as the cost of heating the building during the course of construction,- and (b) $2,868- as the cost of relay.ing rubber tile flooring, which, “owing to the climatic and unnatural conditions prevailing at the time,” did not adhere to the cement floor of the building, and had to be relaid.
 

 There is no merit in either of these claims ; (a) the contract does not provide that the owner should furnish heat for the building, and the evidence does not establish that it is the custom for the owner to do so; and,- in the absence of contract or custom, it was incumbent on the contractor, if heat was necessary during the course of construction, to supply that heat himself in the same way as it was incumbent on him to supply all tools, implements, machinery, and power necessary or proper for carrying out of his contract; and (b) the risk of “climatic and unnatural conditions” was that of the contractor. Picard Const. Co. v. Board of Com’rs Caddo Levee Dist., 161 La. 1002, 109 So. 816. It is not shown that the failure of the rubber tile flooring to adhere to the cement floors was in any way due to the fault of the owner.
 

 II.
 

 The contract provided, as above said, that the building should be completed on February 7, 1925; that the contractors should receive $150 per day for completing it in advance of that date, and should pay $150 per day for each day’s delay after that date.
 

 It is this provision of the contract which gives rise to the real controversy in this case. The defendant contends that the building was not completed until September 1, 1925, and that plaintiffs owe it $150 per day for the 205 days intervening between February 7th and September 1st; and the plaintiffs claim that they owe nothing, (1) because the .delays were due to the fault of the defendants in not furnishing certain fixtures in time, and in not making timely application for electric current with which to test the various apparatus installed; and (2) because defendant had
 
 *203
 
 granted them an extension of 60 days, and had led them to understand that no penalties would be claimed for any delays beyond that time, whereby plaintiffs proceeded with much less celerity than they otherwise would have used, it being then apparent that the building would not be needed until the beginning of the next school term (September).
 

 III.
 

 ■ Our conclusion is: (a) That defendants were not responsible for the failure of plaintiffs to complete the building by February 7, 1925; (b) that plaintiffs were granted an extension of 60 days in which to complete the building, expiring April 8, 1925; (c) that plaintiffs, without any fault on the part of defendant, failed to complete and deliver the building until June 11, 1925, and are therefore liable for $150 per day for the 63 days intervening between April 8th and June 11th; and (d) that defendants led plaintiffs to believe that they would waive, and in fact did waive, all penalties from and after June 11th, when the building was substantially, though not entirely, completed, and when it was accepted by defendants.
 

 These conclusions accord with those of the trial judge, except as to item (d). He charged the defendant with the delays from June 11th to September 1st, being 82 days. Hence his conclusion was that, although defendant owed plaintiff $20,486.91 as the balance of the contract price, yet plaintiff owed defendant $21,750 for the 145 days between April 8th and September 1st; and accordingly he gave judgment for defendant and against plaintiff for the difference, i. e., for $1,263.09. But, according to our view, defendant owes plaintiff $20,486.91, balance of contract price, whilst plaintiff owes defendant only $9,450 for 63 days’ delay between April 8th and June 11th; so that plaintiff should have judgment against defendant for the difference, i. e., $11,036.91.
 

 IV.
 

 The reasons for our conclusions are as follows: (a) Plaintiffs have adduced some testimony to show that their failure to complete the building by February 7th was due to the faults and delays of defendant. But this is simply an afterthought. As early as November it was apparent that plaintiffs would not finish the building on time, and the defendants had abandoned the idea of using it in February; but plaintiffs did not
 
 then
 
 complain that the fault lay with defendant. On the contrary, on January 30th, plaintiffs wrote defendant simply as follows:
 

 “ * * * As you are not going to use the building for this term and have' none of your equipment to put in at present, we would appreciate very much if you will allow us an extension on our time, as we think you would benefit by such, knowing the conditions ás you do.”
 

 (b) On March 10th the defendant’s architect wrote plaintiff as follows:
 

 “This is to advise you that you will be allowed an extension of 60 days from February 7th, 1925, * * * for the completion of all interior painting. This extension applies only to painting as above stipulated.”
 

 As the building could not be completed or delivered or used without the painting, it follows that the above extension, however worded, had the effect of extending the time for completion and delivery of the whole building. Otherwise the alleged extension would be meaningless; for the building was still incomplete in other respects, and, if plaintiffs were to be liable on that account for a penalty of $150 per day, an extension as to painting alone would have been of no use whatever.
 

 (c) Just before the expiration of the 60 days’ extension, two things occurred which entailed an additional delay of 63 days, as aforesaid, before the building was substantially completed and ready for acceptance, to wit: (1) The rubber tile flooring was found to have been improperly laid, and had to be relaid; and (2) the subcontractor for the in
 
 *205
 
 terior .painting defaulted, and his work was so unsatisfactory that it had all to he done over.
 

 Some time elapsed before plaintiffs could start this work anew, and it was not until
 
 aft&r
 
 June 11th that it was satisfactorily completed. This was the chief, if not the sole, cause why the building was not substantially completed before that date, and there is nothing in the evidence tending to show that defendants contributed in any way to the delay thus occasioned, except that plaintiffs’ architect did advise the new subcontractor for the painting that he might take his time and do a good job. But this new job was not sublet until the middle of May, and would have required (and did require) more than 30 days to complete it under any circumstances. However, defendant accepted the building as substantially completed on June 11th (i. e., within 30 days after the letting of the subcontract for painting, and before that painting was fully completed), and we do not see wherein plaintiffs were injured in any way by the architect’s suggestion to the new painting contractor.
 

 For the rest, plaintiffs complain that they were again delayed by the acts of defendant; but, without going into details, we find that these were all small matters which would not have interfered with the acceptance of the building had the relaying of the rubber tile flooring and the interior painting been completed. All that is therefore irrelevant. Indeed, defendants accepted the building as substantially completed even before the painting and floor laying had been finished, and raised no difficulties whatever over the other small matters which had not been completed.
 

 Finally, it may be said, plaintiffs asked no extension of time on account of these matters, although the contract provided that they should do so at once, and in writing, if they thought themselves entitled thereto; and it is apparent that they did not ask such extension because they knew full well that they were themselves in default on their painting and flooring, and therefore not entitled thereto.
 

 It was, of course, unfortunate for plaintiffs that their subcontractor defaulted on them; but plaintiffs signed their contract with defendant knowingly,' and we cannot relieve them of their obligations thereunder.
 

 (d) On June 11th the defendant accepted the building, and recorded their acceptance as required by law; but on the same day an agreement was entered into between plaintiff and defendant wherein it was agreed that the building was only “substantially but not entirely completed”; that the uncondi-' tional acceptance of the building should not release plaintiff from fully completing the building or affedt in any manner the obligation of plaintiff to defendant under the contract.
 

 At that time the building was incomplete only in the following particulars, to wit: (1) Rubber tile flooring to be completed; (2) interior painting to be completed; and (3) certain minor matters, such as replacing broken blackboards, leak in swimming pool, adjustment of violet ray machine, adjustment of ventilating motor, cleaning wood floors, test on heating and ventilating system, test on ice plant, furnishing certain maintenance bonds, and “any other minor items.”
 

 It was not until September 1st, that is to say, until the beginning Of the next school term, that all these small matters were finally completed. Meanwhile plaintiffs were in charge of the building, working at. leisure, and keeping the building in condition.
 

 Plaintiffs testify that they were given to understand that their penalties were to cease after the formal acceptance of the building in June. And Mr. Nield, the architect, when asked to what extent that was true, replied that he probably told plaintiffs, after the acceptance of June 11th, that it was the atti
 
 *207
 
 tude of the committee at that time not to charge any future penalties. He added, however, that he had no authority to tell them so.
 

 But the school board may speak for itself; and that Mr. Nield’s statement to plaintiffs properly reflected the intentions of that board is evidenced by the fact that when plaintiffs claimed the balance due them under the contract, the board authorized the final payment less penalties
 
 from February 7th to Jtme ltth,
 
 “the date of acceptance of the building as substantially completed.” Resolution of October 14, 1925.
 

 Under the circumstances, it is our conclusion that plaintiffs should not be charged with penalties after that date, for it is clear that there was only a trifling amount of work to be done after that date, ’which doubtless would have been done immediately had plaintiffs not been led to believe that there was no need to hurry with it.
 

 V.
 

 Plaintiffs contend that, because defendants have suffered no pecuniary or other appreciable damages from the delay in completing the building, therefore this court should not award the penalties provided for in the contract.
 

 The contention is without merit. That same question arose before the Court of Appeal for the parish of Orleans in Elkhardt Bridge & Iron Co. v. Board of Commissioners, Port of New Orleans, 12 Orleans App. 192, and the conclusion reached by that court was adverse to plaintiffs’ contention; with which conclusion this court found no fault. Vide our No. 21226, March 22, 1925.
 

 In that case it was said in the body of the opinion:
 

 “Article 2125, C. C., shows that ‘liquidated damages’ and
 
 penalties
 
 are one and the same thing; and may be stipulated either for the
 
 non-execution
 
 of the contract or for mere
 
 delay
 
 in the execution thereof.”
 

 And the syllabus to the case, prepared by the court itself, and correctly interpreting its opinion, holds as follows:
 

 “1. Damages stipulated for delay in the. performance of a contract are apart from the damages for the nonexecution of the contract; the latter are never due when the contract has been fully performed, even though tardily; the former are due for the mere delay.
 

 “2. Failure to complete a thing at a time agreed upon is a
 
 total
 
 breach of the obligation to make the delivery at the time fixed upon, even though the object be partly completed at the time.”
 

 Accordingly, articles 1934 and 2127, R. O. O., which provide that penalties and liquidated damages may be modified or reduced where the obligation has been
 
 partially
 
 performed, have no possible application to penalties and liquidated damages specified for delays in the execution of the contract.
 

 And, in the language of the district judge, “it seems to us plain that, where the so-called penalty is stipulated merely for delay, and not for the nonperformance of the contract, the court has no right to substitute its judgment for the solemn contract of the parties.” See, also, Thompson v. Allison, 28 La. Ann. 733.
 

 Decree.
 

 The judgment appealed from is therefore reversed, and it is now ordered that plaintiffs, Stewart-McGhee Construction Company, have judgment against defendant, Caddo parish school board, for the full sum of $11,036.91, with legal interest from judicial demand and costs of both courts.