CLAUDE NEON FEDERAL CO., INC., v. FOUR HUNDRED CLUB ET AL

(April 27, 1931. Opinion and Decree.)
(May 11, 1931. Rehearing Refused.)
(June 22, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Thomas J. Martin, of New Orleans, attorney for plaintiff, appellee.

Michel Provosty and Oliver P. Carriere, of New Orleans, attorneys for defendants, appellants.

JANVIER, J. Plaintiff, a foreign corporation, seeks a solidary judgment against the Four Hundred Club, an alleged commercial partnership, and the three individuals composing the said partnership, all residents of New Orleans.

The amount claimed is $837, with interest, which petitioner alleges was stipulated for as liquidated damages in a contract entered into between the parties, which contract, according to plaintiff, has been breached by defendants.

On or about October 17, 1929, a Mr. Winter, salesman for plaintiff, prevailed upon defendants to order from his company an electric display sign for use in advertising the Four Hundred Club. The salesman prepared the contract on a printed form of his company, and to it, by use of a typewriter, he attached his name above the word "salesman." It was then signed by the three individual defendants, who affixed their signatures below the typewritten words "Four Hundred Club" and above the word "owners," appearing in ink.

The contract contained among others, the following stipulation:

"This agreement is subject to the acceptance of the General Sales Manager, or an executive officer of the company, and is not binding on the company until so accepted."

Under date of November 11, 1929, the contract was formally accepted by the general sales manager on behalf of plaintiff.

There was in the contract no stipulation as to the time within which the sign should be furnished and installed.

On December 11, or, possibly, December 12, 1929, the sign, which had been constructed by plaintiff at its factory in another state, had arrived in New Orleans, and plaintiff's employees, in an effort to install the sign, called on that day at the place at which the Four Hundred Club had formerly been in existence, only to find that the establishment had closed.

Thereafter all reasonable efforts were made to deliver and install the sign, but to no avail, and plaintiff now seeks to avail itself of the remedy provided in the contract and reading as follows:

"If there be default in payment of any monthly rate as herein provided, or other condition as herein expressed, or upon refusal or neglect of the Customer to accept the sign when tendered by the Company, or upon the happening of any contingency whereby the Company shall feel insecure or the sign be placed in jeopardy, or if the circumstances require a cancellation of this agreement, it is hereby agreed that in any such event the Customer shall pay the Company upon demand as liquidated damages, 60% of the sum of the monthly payments that would accrue during the unexpired portion of the agreement, which sum is agreed to be the actual loss which would be suffered by the Company in any such event and is not a penalty. The Company may also in any such event remove the sign from the Customer's premises in addition to requiring the payment of liquidated damages as aforesaid."

There seems to be no dispute over the fact the plaintiff's mathematical calculations are correct, and that, if the technical legal defenses resorted to by defendants are found to be unsound, the judgment to which plaintiff will be entitled should be for the amount prayed for, to-wit, $837, with interest from judicial demand. Defendants resist payment, interposing four defenses, as follows:

First. That plaintiff, a foreign corporation, before attempting to contract for business in this state, did not comply with the requirements of article 13, sec. 4, of the state Constitution of 1921, and there-has no right to maintain in the courts of this state an action growing out of such contract.

Second. That plaintiff failed to tender performance of the contract within a reasonable time, and therefore itself breached the contract, and cannot maintain this action.

Third. That in any event defendants have partially performed their obligation, in that they have paid $135 on account of the contract, and that thus the provision for liquidated damages may be modified by the court under the provisions of article 2127 and of paragraph 5 of article 1934 of our Civil Code, reading as follows:

Art. 2127: "The penalty may be modified by the Judge, when the principal obligation has been partly executed, except in case of a contrary agreement."

Art. 1934, par. 5: "Where the parties, by their contract, have determined the sum that shall be paid as damages for its breach, the creditor must recover that sum, but is not entitled to more. But when the contract is executed in part, the damages agreed on by the parties may be reduced to the loss really suffered, and the gain of which the party has been deprived, unless there has been an express agreement that the sum fixed by the contract shall be paid, even on a partial breach of the agreement."

Fourth. That, if any judgment is rendered, it should be against defendants jointly and not solidarily, because of the alleged absence of proof that the said Four Hundred Club was a commercial partnership.

Defendants, in addition to praying that

plaintiff's suit be dismissed, asked for judgment in reconvention for $135, the amount paid to plaintiff when the contract was signed by them.

The district court rejected all the defenses referred to, and rendered judgment for plaintiff, as prayed for.

The facts are in dispute only in the few unimportant details to which we shall refer when necessary.

Defense No. 1. Plaintiff is, it is true, a foreign corporation, but it had, prior to entering into the contract, according to a certificate of the secretary of state of Louisiana, filed with the said official here "a certified copy of certificate of incorporation and articles of incorporation," and was thus authorized "to exercise the same powers, rights and privileges as are accorded similar domestic corporations." According to another certificate issued by the same official, plaintiff had also filed "a written declaration as required by law setting forth and containing the place or locality of its domicile, the place in the state where it is doing business, the place of its principal business establishment, and appointing N. Burrell, of the City of New Orleans, State of Louisiana, as its agent, upon whom service of process may be made in this state." But, say defendants, plaintiff had not established, and did not maintain, in this state an office for the transaction of its business "where transfers of stock shall be made, and where books shall be kept for public inspection showing the amount of capital stock subscribed, the names of owners of stock, the amount owned by them respectively, the amount of said stock paid, and by whom, the transfers of said stock, with the date of transfer, the amount of its assets and liabilities and the names and places of

residence of its officers," all of which requirements are found to be imposed by article 13 of section 4 of the Constitution of 1921, upon "every corporation, domestic or foreign, doing business in this State."

It is conceded that, in such office as plaintiff maintains in this state, no such stock transfer records, or capital stock records, or books showing assets and liabilities, are kept. Does this failure deprive plaintiff of its right to recover?

Defendant's answer is in the affirmative, and they cite considerable authority. For instance, in a situation somewhat similar to this, the United States Circuit Court of Appeals for the Sixth Circuit, in Phillips Co. v. Everett, 262 F. 341, 345, said:

"It is, of course, unfortunate that the appellant [Phillips Company] must lose the cost of the material and labor * * *; but that is not the fault * * * of the court. The appellant [sprinkler company] could easily have protected itself from loss by complying with the laws of Michigan. * * * It failed, neglected, or refused to do this, and the courts cannot relieve it from the consequences of its own neglect."

In Mississippi we find a similar decision in Peterman Construction, etc., Co. v. Blumenfeld, 156 Miss. 55, 125 So. 548, 550, in which the court said:

"A contract made without first complying with the provisions of the above quoted statute could not be enforced in * * * this state. * * * We cannot vary the law, because our sympathy may be excited by the harshness of its particular application to the particular individual."

In a case involving a claim for the contract price of signs, the Supreme Court of Michigan, in General Highways System v. Dennis, 251 Mich. 152, 230 N. W. 906, held that the foreign corporation was doing

business illegally, and that it was therefore unable to sue on its contract in Michigan.

Defendants also cite a Louisiana decision, Thomas Cusack Company v. Ford, 138 La. 1096, 71 So. 196, 197, and maintain that the views expressed therein are authority for the doctrine contended for.

It is, of course, well settled that a state may prohibit foreign corporations from engaging in business in the state, except upon compliance with such reasonable requirements as the state may feel justified in imposing, and included in this right is the right to refuse to enforce contracts, or rights arising thereunder, if they have been entered into without compliance with such restrictions or regulations. Therefore the question of the validity of such a contract made before the corporation has obtained the right to do business is to be determined solely by statutory interpretation.

The authorities are much in conflict as to whether such unauthorized contracts are valid. There is one class of cases in which the statute imposes a penalty for engaging in business without prior compliance with the statutory requirements, and in almost all such cases it has been held that, where a penalty is imposed, the contracts cannot be held void or unenforceable, because to so hold them void would be to impose a penalty in addition to that specifically prescribed. Illustrative of this type of case are Clark v. Middleton, 19 Mo. 53; Toledo Tie & Lumber Co. v. Thomas, 33 W. Va. 566, 11 S. E. 37, 25 Am. St. Rep. 925.

If no penalty is imposed, but the statute contains what may be termed prohibitory language, such as "no foreign corporation shall engage in business until," in nearly all such cases it has been held that the contracts so entered into are void and unenforceable. See In re Comstock, 6 Fed. Cas., page 244, No. 3078; Armour Packing Co. v. Vinegar Bend Lumber Co., 149 Ala. 205, 42 So. 866, 13 Ann. Cas. 951; Northwestern Mutual Life Ins. Co. v. Elliott (C. C.) 5 F. 225; National Mercantile Co. v. Watson (D. C.) 215 F. 929.

In another very similar class of cases, in which the statute provides specifically for the illegality of such contracts, it has been held practically universally that such illegality cannot be escaped and that the contract is unenforceable. Examples of this type of case are numerous, and among them are two much relied on by defendants: Phillips Co. v. Everett, supra, in which the statute provided that "it shall be unlawful, etc."; and General Highways System, Inc., v. Dennis, supra, in which the court stated that "the statute made it unlawful," etc.

It will be noted that the constitutional provision involved here does not fall within any of the classifications above mentioned. No penalty is provided. The provision does not contain prohibitory language, nor does it require that "prior to engaging in business" the requirements shall be complied with. It merely states or declares that "every corporation, domestic or foreign, doing business in this state shall" do the various things therein set forth and heretofore mentioned. Had it been intended that contracts entered into without prior compliance with the constitutional provision should be null and unenforceable, it would have been quite simple for the framers thereof to have so declared. In Thomas Cusack Co. v. Ford, supra, defendants find a case which they contend sustains their views, but in this we are unable to agree.

There, as here, plaintiff, a foreign corporation, contracted to erect signs in this state, and was compelled to resort to the courts in an effort to collect the stipulated price. The defense made was that the corporation had not qualified to do business in this state, and therefore could not maintain in the courts of this state a suit on such a contract. At that time there was a provision in the Constitution (that of 1898, art. 264) to the effect that no domestic or foreign corporation should do any business in this state without having one or more known places of business and an authorized agent or agents in the state upon whom process might be served. Act No. 54 of 1904 was enacted to carry the above constitutional provision into effect. Section 1 of the Act No. 54 of 1904 was amended by Act No. 284 of 1908, and section 1 was again amended by Act No. 243 of 1912, but the various amendments are unimportant at this time, because it is the penalty provided in section 2 of the act which makes the present argument submitted by defendants interesting. That penalty clause provided that failure to comply with the requirements of section 1 should subject the corporation to suit in any parish in which it might do business, and should authorize service of process upon the secretary of state.

The court in that case (Cusack v. Ford) held that failure to comply with the requirements of section 1 of the act did not result in the inability of the foreign corporation to enforce its contracts, and counsel for defendants in the case at bar argues that the court in that case reached that conclusion because of the statutory penalty provided for violation of section 1, and that a different conclusion would have been reached had no penalty been provided; in other words, that that case fell within the classification No. 1 heretofore discussed. We do not so read that decision. It is true that the court did, in commenting upon the decision of the Supreme Court of the United States in Fritts v. Palmer, 132 U. S. 282, 10 S. Ct. 93, 33 L. Ed. 317, say that in the Fritts case it was held that the result of failure to comply with such requirements "was not the nullity, or unenforceability, of the contract, but merely the penalties mentioned in the statute," and it is true that that language, read by itself, might be construed as a holding that, if there were no penalty, then the effect of non-compliance should be nullity, but the words which we have quoted are followed immediately by these: "If the statute had intended that contracts entered into in the course of such business should be null, or unenforceable, it would have said so."

Here, as we have stated, it would have been very simple to have provided in the constitutional provision for absolute nullity of contracts made prior to compliance therewith, but we find no such provision in the Constitution.

It is our opinion that failure to comply with the comparatively unimportant requirements referred to should not deprive the offending corporation of all rights under its contracts, but that the proper officials of the state may, by proper action, force either the departure of the corporation or its compliance with such requirements. That those officials may encounter practical difficulties in instituting such action does not alter the situation. The corporation is in the status of a de facto corporation, to say the least. It will be noted that, in regard to the requirements mentioned, a foreign corporation and a domestic corporation are treated similarly, and we are well convinced that, if a do-

mestic corporation, having complied with all other requirements of law, as did plaintiff, should fail only in the particulars complained of here, the courts of this state would not hold the domestic corporation without right to enforce its contracts. In this regard we note that in such a situation the Supreme Court of this state held that a domestic corporation, which had substantially complied with the legal prerequisites to corporate existence, but had failed in details similar to those omitted here, was, nevertheless, a de facto corporation, and was authorized to maintain in the courts of this state an action growing out of one of its contracts. See Gerth's Realty Experts, Inc., v. Kracke et al., 156 La. 36, 100 So. 41, 43. There, as here, the plaintiff corporation, or de facto corporation, had executed its articles of incorporation, and had substantially complied with all of the laws of the state, and, apparently, had obtained from the secretary of state a certificate of corporate existence. It seems, however, to have failed in complying with other more or less unimportant details. The Supreme Court quoted with approval the following:

" ' "If the state acquiesce in the usurpation of corporate powers, individuals cannot complain." This rule finds authority in Cyc. vol. 10, p. 256, wherein it is said that the rightfulness of the existence of a body claiming to act, in fact acting, in the face of the state as a corporation, cannot be litigated in an action between private individuals and the assumed corporation. * * * The rightful existence of a corporation cannot be raised in a collateral proceeding.' New Iberia Sugar Co. v. Lagarde, 130 La. 393, 58 So. 18; Nelson v. T. & P. Ry. Co., 152 La. 117, 92 So. 754."

We find that, in considering the question of substantial compliance with such requisites, Ruling Case Law, vol. 12, p. 88, sec. 63, states:

"Even though it is held that the statute of a state requiring foreign corporations to do and perform certain acts before commencing to do business in such state is mandatory, and must be complied with before such corporations will be allowed to maintain actions to enforce contracts, yet it is usually held that a substantial compliance with the statute by the foreign corporation will entitle it to enforce its contracts, * * *."

In Goodwin et ux. v. Colorado Mortgage & Inv. Co., 110 U. S. 1, 3 S. Ct. 473, 475, 28 L. Ed. 47, the Supreme Court of the United States considered a defense very similar to that now before us, in which it was sought to defeat an action by a foreign corporation on the ground that it had not complied with the requirements of the Constitution and statutes of Colorado. The laws required that, prior to entry into the state for the purpose of doing business, foreign corporations, among other things, should designate an authorized agent upon whom process might be served, and it appeared that the corporation in question had filed a certificate to the effect that the "general manager" of the corporation should be the agent for the service of process. The court held that this was not strict compliance with the requirement, but said "that the certificate in question was in substantial conformity to the law."

Here the corporation had filed its articles of incorporation, had named an agent for the service of process, and, according to the certificates of the secretary of state, was authorized to do business in this state. We think, therefore, that, because of the language of the constitutional provision, which is not prohibitory, and also because of the substantial compliance with the requirements thereof, plaintiff corporation should be permitted to maintain this action.

Second Defense. Defendants assert that the contract was breached by plaintiff by its failure to tender delivery within a reasonable time.

No time of delivery was stipulated for in the written contract, and in that contract we find a provision that "no verbal contract or agreement has been entered into, other than expressly covered by this instrument." It is contended, however, that by verbal agreement it was understood that `delivery should be made within five weeks of the day on which the order was placed. There is considerable dispute as to whether there was such a verbal agreement as to the date of delivery, and it is argued that such verbal agreement would have been ineffective, even if made, in view of the contract provision from which we have just above quoted, and which declared that the entire agreement was contained in the written document. Delivery of the sign was tendered about seven and one-half weeks after the order was placed, and it satisfactorily appears that no protest at the delay was made, and that, had it been tendered within five weeks, it could not have been accepted or paid for, since, even at that time, the defendant partnership had ceased to operate.

Plaintiff maintains that, in view of the failure to stipulate for a date of delivery, the law writes into the contract an agreement for delivery within a reasonable time. Haskins Trading Co. v. S. Pfeifer & Co., 14 La. App. 568, 130 So. 469; H. T. Cottam & Co. v. Moise, 149 La. 305, 88 So. 916; Wilson v. Broom, 6 La. Ann. 381; Pratt v. Craft, 19 La. Ann. 131; Bartley v. City of New Orleans, 30 La. Ann. 264; Thompson v. Woodruff Co., 7 Cold. (Tenn.) 401. Defendant claims that delivery should have been tendered within five weeks.

We need not solve this problem, because it is evident that time was not of the essence of the contract to the extent that an additional ten or fifteen days was of importance, since it was so unimportant that it was not written into the first contract, which it would have been if of the essence, and for the further reason that plaintiff was not put in default, and for the additional reason that the result would have been the same had the delivery been tendered, even within the time contended for by defendant.

"In an action on account for work and labor performed under an agreement, the objections by the defendant that it was not done within the time specified, and was not satisfactorily done, comes too late if not made until after the work has been done."—Syllabus, Lyons v. Dymond & Lally, 23 La. Ann. 709.

Third Defense. Under this defense is not raised the question of liability, but only whether or not plaintiff can claim under that provision of the contract with reference to liquidated damages, and, if so, whether the whole amount due under that provision should be awarded. Defendants' argument is that they have partially complied with their obligation, and that thus, under the two codal provisions which we have already set forth, we should not grant judgment for the liquidated damages in full, but for only such sum as will repay the damage actually sustained by plaintiff.

The only partial compliance which has been made by defendants is the payment of $135, which was paid when they originally signed the contract, and which was already paid. Therefore, when they stipulated in that contract for the liquidated damages in case of their default, to hold that that payment, made at the time the contract was confected, has the effect of writing out of the contract another provi-

sion for liquidated damages, does not appear to us logical. Credit for the payment has been given, and that is all to which defendants are entitled.

Fourth Defense. Was defendant, Four Hundred Club, a commercial partnership? The record shows that that organization was a so-called "night club."

The Civil Code, in article 2825, defines commercial partnerships, and in paragraph 1 thereof declares such partnerships to be such as are formed "for the purchase of any personal property, and the sale thereof, either in the same state or changed by manufacture."

What is a "night club?" Is it engaged in the business of buying and selling personal property in the same state or changed by manufacture? We have no hesitancy in saying that it is. We know that a restaurant buys and sells articles of food. We know without evidence that a "pig stand" does likewise.

While we do not plead guilty to a knowledge of all the ramifications of the business of "night clubs," we need no evidence to convince us that in them and by them personal property consisting of food and drinks is bought and sold. It is thus a commercial partnership, and the members thereof for its defaults are solidarily liable by reason of the second paragraph of article 2872 of the Civil Code, reading as follows:

"Commercial partners are bound in solido for the debts of the partnership."

We believe that all of the defenses interposed by defendant should be overruled, and accordingly it is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed, at the cost of appellants.