In this suit is involved the right of the plaintiff to enforce the below quoted penal clause that was incorporated in a written act of sale of a new Buick passenger car by it to the defendant, viz.:
"In consideration of the sale by the seller to the buyer of the automobile hereinabove described, the buyer does, by these presents, obligate himself not to transfer, sell, assign, mortgage, or convey the automobile herein sold for a period of one (1) year from date hereof, without first giving the seller an opportunity to purchase the said automobile at its cost price, less depreciation at the rate of 2% per calendar month. The buyer obligates himself to notify the seller by registered mail at least ten (10) days in advance.
"A violation of the above clause of this agreement shall entitle the seller to recover from the buyer the sum of Five Hundred and No./100 ($500.00) Dollars, as liquidated damages, together with any costs, interest, and attorney's fees which may be incurred by the seller in enforcing this clause."
We here quote the salient allegations of the petition:
 II.
"That because of the discontinuance of the manufacture of Buick automobiles for civilian use during World War Two and the limited number of automobiles produced since that time, the demand upon your petitioner for new Buick automobiles has been far greater than its supply can meet.
 III.
"That immediately after the resumption of the manufacture of Buick automobiles after the termination of World War Two, in order to protect its good reputation and the public in general against the resale of new Buick automobiles in the Shreveport area at prices vastly greater than the new list price of such automobiles, your petitioner inaugurated a policy of refusing to sell new Buick automobiles for purposes of resale and of delivering new automobiles only to individuals whom they believed to be bona fide purchasers for their own use, convenience and enjoyment.
 IV.
"That despite petitioner's diligent and conscientious efforts to restrict sales of new automobiles to bona fide purchasers, many new automobiles so delivered by your petitioner were nevertheless immediately resold by purchasers to used car dealers and others at prices far in excess of the new list price thereof and, consequently, the public was led to believe that your petitioner was selling new automobiles to used car dealers for resale, to the prejudice of bona fide prospective purchasers and the public in general.
 V.
"That your petitioner thereupon adopted the policy of incorporating into the provisions of all sales contracts entered into between it and persons whose reputation and integrity were not personally known to your petitioner, the following agreement: * * *".
Here follows the penal clause, supra.
 VI.
"That for a period of more than one year prior to June 24, 1948, one E. G. Ray, a resident of the Parish of Caddo, State of Louisiana, had made repeated and urgent requests for the purchase and delivery of a new Buick automobile, representing unto your petitioner that his need therefor was imperative."
The petition further sets forth that on June 23, 1948, plaintiff advised the defendant that it was in a position to sell and deliver to him the new Buick car, and, accordingly, on June 26th following, the sale was consummated and defendant paid the price thereof, $2,997.02, in cash, this being the regular retail price of such a car; that defendant accepted delivery of the car and after driving it only eleven miles, on or about the day he bought it, sold the same to a used car dealer in Shreveport, Louisiana, for a profit, who, in turn, resold the car to a bona fide purchaser for a price in excess of $4,000.00; that the sale by defendant of said car was done *Page 85 
without the knowledge of the plaintiff and was a direct violation of the penal clause in that he did not first give plaintiff the right to re-acquire the same as he was obligated to do.
Prior to answering to the merits, defendant, through subpoena duces tecum, had plaintiff produce the contract between it and the Buick Motor Division of the General Motors Corporation. It was alleged in the motion that production of said contract is necessary and material to the mover's defense. After the document was produced, defendant filed exceptions of no cause and no right of action. In neither exception is it stated wherein the petition is defective.
Prior to trial and submission of the case on its merits, there was a trial of the exception of no right of action and testimony was adduced. Both exceptions were then overruled. They are urged here.
Defendant admits in his answer that he purchased and then sold the car when and in the manner alleged, but he denies that in so doing he violated the contract of sale to him in any respect. He denies the allegations of Articles III and IV of the petition, but admits the allegations of Articles II and VI thereof. Further answering, he shows that plaintiff has not alleged, nor has it, in fact, been damaged by the resale by him of the automobile; and that in the absence of resultant damages there can be no recovery by it.
There was judgment in favor of plaintiff for Five Hundred ($500.00) Dollars, plus One Hundred Fifty ($150.00) Dollars attorney's fee, and defendant appealed devolutively.
It is admitted that if there is recovery by plaintiff, $150.00 is a proper fee for its counsel.
In effect, amplifying the exception of no right of action, appellant, in brief, says: "The exception of no right of action was based on the contention that the plaintiff was bound by contractual provisions with the Buick Division of General Motors Corporation to sell new Buick automobiles at prices established by the Buick Division of GMC, referred to as the 'new list price' ".
And, also in brief, appellant, in effect, amplified the exception of no cause of action by saying that it is: "founded on the contention that the contract sued on * * * was in violation of the provisions of Act 90 of 1892, and, therefore, null and void according to the terms of that act."
In regard to the exception of no cause of action, it is also said in brief: "On the argument of the case on the merits it was further shown by defendant that the plaintiff's petition and evidence produced by plaintiff failed to disclose a cause of action for the reason that the so-called 'penal clause' sued on in the instant case was not a valid penal clause, no damage at all having been alleged or proved to have been suffered by the plaintiff as a result of defendant's actions."
From the foregoing amplification the issues in the case may be comprehended.
Neither exception was re-offered after trial of the case on its merits. The exception of no cause of action was primarily directed against the petition, and not against the petition augmented by the evidence adduced on trial of the exception and the case on its merits. The exception of no right of action, it is true, was filed after the contract between plaintiff and the Buick Motor Division of the General Motors Corporation was produced, but that instrument did not become a part of the petition but simply became evidence in the case after its introduction by defendant on trial of the exception of no right of action. Be this as it may, since appellee has not challenged the correctness of this procedure, we shall consider and pass upon both exceptions as though they had been re-offered during or after the trial of the case on its merits.
We are unable to perceive wherein the contract between the plaintiff and the Buick Motor Division of the General Motors Corporation has any material influence or bearing on the question of plaintiff's right to enter into the contract sued on or to sue to recover damages for its breach. It is contended by appellant that said contract binds and obligates the plaintiff to sell Buick products at a price not more than that fixed by said Buick Motor Division *Page 86 
and that this covenant or contract strikes with nullity the contract involved herein. Even though this were true, no cogent reason appears why it should strike down plaintiff's otherwise valid contracts with its own patrons. As we read the produced contract and consider the testimony of plaintiff's general manager, it seems clear that appellant's deductions therefrom are not well founded. The produced contract bearing on this question, reads: "Seller will establish Advertised Delivered Prices on New Buick motor vehicles and chassis at Flint, Michigan, and it is the desire of Seller that all retail customers wherever located be able to purchase such vehicles at not more than these prices, plus transportation charges and the retail installed prices of any optional equipment and accessories selected by the retail purchaser, all as shown in the current sheet of Suggested Maximum Retail Delivered Prices issued to Dealer by Seller from time to time, plus applicable taxes, if any."
Mr. Carl L. Stewart, plaintiff's general manager, testified that his company never sold Buick products for prices in excess of that suggested by the Buick Motor Division but that it did so more particularly because he believed such prices adequate since the profits (from twenty to twenty-five per cent) on such sales were fair, and all that any dealer should ask. He did not believe, as intimated by appellant, that should the suggested prices be exceeded, his company would forfeit its franchise with the parent company. He knew of at least one company selling Buick products that did not follow the suggested sale prices and nothing had happened to it.
It is argued by appellant that the penal clause has an unlawful purpose in that it is in violation of Act No. 90 of 1892. The general purpose of this act, patterned after the Federal Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1-7, 15 note, is tersely disclosed in its title, which reads:
 "An Act
"To prevent trusts or combinations intended to restrain trade or to control the market value of merchandise, produce of commodities and to provide for penalties and punishment of persons, corporations, firms and associations of persons connected with them, and to promote free competition in the State of Louisiana."
It is not contended by appellant, nor could it well be, that the General Motors Corporation or the Buick Motor Division thereof stood to profit financially or otherwise from the enforcement of the penal clause. In this respect only the defendant and plaintiff were involved, directly or indirectly. The clear and unambiguous provisions of the Act reveal that it has no application whatever to the contract involved herein. It, inter alia, says: "* * * provided, that no contract or agreement or arrangement which does not include, or which cannot be held to include a stipulation between the parties to share in the profits of any such contract, agreement or arrangement, or which contract, agreement or arrangement does not provide for or does not contemplate a profit or pool to be divided between the parties to such contract, agreement or arrangement, shall be held or construed to be in violation of the provision of this act." Section 5.
Lastly, it is argued by appellant that the so-called penal clause is not a valid covenant but an attempt to enforce punitive damages on the defendant, since there were neither allegations nor proof of damage to the plaintiff. This position is. equally untenable.
The contract between plaintiff and the defendant is a simple one. It sets up no innovation in our law. It is a sale with the exclusive privilege in the seller to reacquire, on definite terms and within a fixed time, the sold article if the purchaser decides to sell same, and provides a civil penalty for its violation by the vendee.
A penal clause in contracts is authorized by many articles of the Civil Code. The following articles thereof reflect the nature and character of such a clause:
Art. 1934, Par. 5:
"Where the parties, by their contract, have determined the sum that shall be paid *Page 87 
as damages for its breach, the creditor must recover that sum, but is not entitled to more. But when the contract is executed in part, the damages agreed on by the parties may be reduced to the loss really suffered, and the gain of which the party has been deprived, unless there has been an express agreement that the sum fixed by the contract shall be paid, even on a partial breach of the agreement."
Art. 2125:
"The penal clause is the compensation for the damages which the creditor sustains by the non-execution of the principal obligation.
"He can not demand the principal and the penalty together, unless the latter be stipulated for the mere delay."
Art. 3075:
"One may add to a transaction the stipulation of a penalty against the party who fails to perform it; and in this case the non-performance of what has been agreed on, gives a right to exact the penalty according to the tenor of the agreement, and pursuant to the rules recited in the title: Of Conventional Obligations."
Other articles of the Civil Code, having reference to such a clause, are: arts. 2117, to and including 2122, and arts. 2124, to and inclusive 2127.
The argument that for one to avail himself of such a clause he must first show that he has sustained damages because of the breach of the primary obligation is not well founded in law. The primary object and purpose of the insertion of such a clause in a contract is to guarantee performance thereof, and, secondly, to dispense with proof of damages should the principal obligation be violated by one against whom the penal clause is directed. The parties themselves by such a covenant solemnly resolve to determine, in advance of possible suit, the amount of damages to be paid in case the primary obligation is violated. By their own actions they simply obviate the necessity of the Court having to fix damages in case of suit for breach of the principal contract. It is fundamental that parties to a contract are free to stipulate as they please, so long as their stipulations are not contrary to good morals, or public policy, or do not violate some law.
If once the door is opened to the admission of proof on the question of damages in connection with such a contract, where will it end? Would we say that since actual damages to the amount of $10.00 have been proven, that fact gives plaintiff the right to recover the amount of liquidated damages stipulated in the penal clause? Or, if damages to the extent of $1,000.00 are proven, but as the penal clause limits the amount of recovery to $500.00, this amount and no more would be allowed? It appears absurd.
If appellant's position should be upheld, then the penal clause becomes a myth. It would be meaningless.
In the case of Flanders v. Motor Sales and Service, Inc., 9 La. App. 616, 118 So. 387, 388, dealing with a penal clause, the Court said: "There is no doubt of the capacity of parties to stipulate for liquidated damages, and, when agreed upon, courts will not inquire whether the actual damage suffered equaled or approximated the agreed amount. R. C. C., Art. 1934; Succession of Thompson v. Allison, 28 La. Ann. 733; Stewart-McGhee Construction Co. v. Caddo Parish School Board,165 La. 200, 115 So. 458; Sun Printing Publishing Association v. Moore, 183 U.S. 642, 22 S.Ct. 240, 46 L.Ed. 366."
The opinion in this case and those cited therein and in Federal Sign System v. Leopold et al., 10 La. App. 709, 120 So. 898, also in Claude Neon Federal Company, Inc., v. Four Hundred Club, et al., 16 La. App. 651, 134 So. 445, puts at rest, or should do so, any uncertainty anent the subject under discussion. See also: Heeb et ux. v. Codifer Bonnabel, Inc.,162 La. 139, 110 So. 178; Stewart-McGhee Construction Company v. Caddo Parish School Board, 165 La. 200, 115 So. 458.
Appellant has cited and relied upon Reimahn et al. v. New Orleans Public Service, Inc., 191 La. 1079, 187 So. 30. This case does not derogate against the well *Page 88 
established rule in the cases cited by the plaintiff, supra.
For the reasons herein assigned, the judgment from which appealed is affirmed with costs.