*898 The opinion of the court was delivered by
Nioholls, C. J.
Plaintiff and defendant were formerly partners •as butchers in New Orleans. The present litigation is the result of the sale by the defendant to the plaintiff of all the former’s interest in the business of the firm, in the stock in trade and all appliances and appurtenances thereof, including the tools, horses, wagons, good will, custom, patronage and certain enumerated contracts for the -price of three thousand dollars, two thousand dollars of which were paid cash, and the balance represented by the purchaser’s note, payable at six months.
The present suit was instituted in October, 1893. Plaintiff, after setting forth in his petition the above facts, alleges that in the contract it was further stipulated, as a part of the consideration for the price paid, that defendant was not to engage in any similar business, directly or indirectly, in the city of New Orleans, for the period -of five years, nor was he to solicit business for himself or for any other person or persons, so engaged during the said period, defendant binding and obligating himself, in the event of the violation of «aid obligation, in whole or in part, to pay damages to the plaintiff, which damages were by said act fixed and liquidated at the sum of five thousand dollars, defendant agreeing to pay said amount as a penalty for any violation of the said stipulation, and that plaintiff should restrain him by injunction in any attempt to violate said agreement.
He further alleges that the interest conveyed by the defendant was worth much less than three thousand dollars, and that the main reason and consideration for the payment of the three thousand dollars was defendant’s obligation not to engage in business or solicit orders, as before stated. He then represents that defendant had, on the 27th of September, 1893, violated this obligation by opening and establishing at stall No. 44, Dryades Market, in New Orleans, a place for the vending of fish, poultry, meats, etc., and had there sold the same, and would continue so to do unless enjoined. 'That by reason of the said conduct plaintiff had by law, and by defendant’s express agreement, a right to restrain him from further eonductingbr pursuing the said business, directly or indirectly, and from soliciting, directly or indirectly, any trade or customers for that or any other similar business. ‘That inasmuch as by the stipulations of the act of sale damages for the -violation of said agreement are fixed and liquidated at the sum of five *899 thousand dollars, plaintiff is entitled "to recover that amount from the defendant. He prayed for the injunction to which he averred himself entitled, and for judgment in his favor for the sum of five thousand dollars, with legal interest from judicial demand.
An injunction was granted as prayed for, and was duly served upon ’the defendant.
On the 10th October, at the instance of plaintiff, defendant was ruled to show cause, on the 12th of the same month, why he should not be punished for contempt for having violated the injunction. On the same day (the 10th) defendant moved to dissolve the injunction on the ground that the petition showed no cause of action, and that the bond and security given for the injunction were insufficient. "This motion was fixed for trial for the 12th. The rule for contempt and the motion to dissolve the injunction seem to have been taken up and tried together, the trial resulting in a judgment dissolving the injunction. From that action of the court plaintiff appealed. ¡Subsequently to the taking of the appeal defendant died, and his widow and heirs having been made parties they have asked in this eourt an affirmance of the judgment.
Appellant insists, that believing he was entitled under his contract 'to ask, at one and the same time, both a judgment, for five thousand -dollars by way'of damages or penalty, and an injunction for the purpose of enforcing defendants’ obligation not to engage in business, he had the right to frame his demand accordingly, though possibly -in so doing he subjected himself to being forced to an election as to which of the two claims he would stand upon, should the court hold that this could not be done. He complains that the District Court by its action cut him off from a right and power of election which belonged to him, even if the two demands were inconsistent, and that the court itself made for him an arbitrary election which it was not authorized or warranted in making. He maintains before us that the two claims were not inconsistent, and that he can in the premises legally exact both a moneyed judgment and an injunction.
The matter as presented to the district judge was, on the one hand, the ordinary one of a demand for a personal judgment for a ■sum of money, coupled with an injunction, apparently accompanying it as an incidental remedy, and on the other a motion to dissolve that injunction on the face of the papers, for the reason that the petition -showed no cause of action. This motion was the customary one *900 employed in matters of injunction, and the expression that the petition showed no cause of. action had reference to it. The motion as - made, called simply for an absolute decision, either maintaining the-injunction .or setting it aside. There was nothing to intimate to the judge that any right of election w.ould be involved in his decision. Plaintiff did not suggest to the court that it should so frame its-decree as to save a right of election. Possibly this might have been done, had the right of election now claimed really existed, by a-conditional or contingent order of dissolution; but whether this be so or not, such a- right or privilege is not shown by the record to-have been mentioned or hinted at.
.The court was probably of the opinion that the plaintiff by asking for a judgment of five thousand, dollars was ipso facto in the position of having himself already forcedly made an election. It may also-well be that an examination of the pleadings and prayer as a whole-led it to the conclusipn (injunction not being necessarily a writ of right) that the facts disclosed by the petition were of a character-such as to bar the remedy-of injunction, independently of the question of an election.
Defendants’ position — sustained by the court below — is that plaintiff in proceeding against him, and asking for a judgment of five thousand dollars, abandoned any right which he might have otherwise had to an injunction.
We.are of the opinion that plaintiff would have had the right to an injunction against defendant to enforce the obligation entered into by him in his contract, not to -engage in business in New Orleans fora certain time. This court has so decided, in Levine vs. Michel, 35-An. 1121 and there are numerous common law authorities to the same-effect.
Plaintiff concedes that he would take this remedy, not by virtue of' any permission from the defendant, but from the law, and says he-refers us to the express consent of the defendant to its exercise, as-going to show the intentions of the parties and to fix and establish, the character of the claim for five thousand dollars.
Referring to the defence made in the case as mentioned above,, plaintiff, in his brief, says: “ On this proposition the authorities are-agreed that the -test -is the intention of the parties to the contract, to be.gathered from the-.contract itself in its entirety. Thus, if it should appear that the intention of the parties to the contract was that upon. *901 the payment of a stipulated sum it should be permissive of the right to commit the breach, and that the stipulation to do or not to do may then be done or not done, as the case may be, then there can be no action for the stipulated damages and for the specific performance also. But if, on the other hand, the evident intention of the contracting parties, as gathered from the contract in its entirety, js that a specific performance of the obligation to do or not to do is the prime or moving object or cause for the contract, and that a stipulation of a ‘ penalty ’ for the breach was intended, not as a measure of bad faith, but as an inducement to good faith, an action will lie to recover the penalty and an injunction may go out to stay the action complained of.”
We do not understand the defendant to assert that the contract, as made, created a facultative obligation entitling him of right to recede from his obligation not to engage in business upon payment of five thousand dollars, thus depriving plaintiff of any legal power of control over defendant’s actions in that respect. Defendant sets up no such pretension. We take it that he perfectly well understood and recognized that in undertaking to open an establishment of his own, he did so in express vielation of his obligation, and not under a conditionally reserved right, and that he well knew that he subjected himself to all the rights and remedies which would belong to the plaintiff as the result of that fact.
What we have to deal with now is the ascertainment of what those rights and remedies are. We have already said that he could have checked the defendant by injunction. If he thought proper not to do this, he was undoubtedly entitled to bring an action against him, demanding five thousand dollars damages as for breach of contract. But the question is, is he entitled in this case to do both. It may be true that there are eases where a primary obligation having been entered into, and a penalty stipulated to insure its performance, the obligee may properly sue for the penalty and also for the specific performance of the obligation; and also eases where a demand for the specific performance of an obligation may be legally coupled with a demand for liquidated damages resulting from its breach. We confine ourselves to seeing whether the present case falls within one or the other of those .classes without attempting to discuss or define what those classes are.
In Art. 2125 of the Oivil Code it is declared that “the penal *902 clause is the compensation for the damages which the creditor sustains by the non-execution of the principal obligation. He can not-demand the principal and the penalty together, unless the latter be stipulated for the mere delay," and in Art. 2127, that the courts are authorized to modify the penalty when the principal obligation has-been partly executed, except in case of a contrary agreement.
The fifth paragraph of Art. 1934, C. C., referring to damages arising from breach of contract, says: “Where the parties by their contract have determined the sum that shall be paid as damages for its breach, the creditor must recover that sum, but is not entitled to more. But when the contract is executed in part, the damages-agreed on may be reduced to the loss really suffered, and the gain of which the party has been deprived, unless there has been an express-agreement that the sum fixed by the contract shall be paid even on a partial breach of the agreement."
With these provisions of the law before us, let us refer to the terms-of the special contract. The act between the parties referring to the obligation assumed by the defendant not to engage in business says:
“ In the event of the violation of this obligation in whole or in part the damages inflicted upon the purchaser or his assigns in consequence thereof, are hereby liquidated and fixed at the sum of five thousand dollars, collectible in any court of /competent jurisdiction, and the vendor agrees to pay said amount as a penalty for said vior lation. He further consents that the purchaser shall restrain him by injunction, if necessary, for any attempt to violate said engagement, hereby authorizing any court of competent jurisdiction on the application of said purchaser and according to law.”
In examining the clauses of this contract the words “ in violation of this obligation in whole or in part,” which we have ourselves italicized, are specially noticeable. By the contract the sum of five thousand dollars was fixed as the damage which would be inflicted on the purchaser, or the penalty which would be imposed upon the vendor independently of the extent or duration of the breach, whether it should cover an hour, a day, or the whole five years during which this obligation was stipulated to continue. Let the time be long or short, let the actual damage be large or small, the parties contracted for the payment to the plaintiff of the sum of five thousand dollars, and withdrew from the courts a power of reduction or modification. By express agreement the bare fact of a violation of the obligation by *903 the defendant entailed upon him a liability to pay plaintiff the full-amount agreed upon.
Let us now turn to other articles of the Oode relative to breaches-of contract and see what their provisions are. We quote some of them in full, italicizing certain words, as we have already done in case of articles already copied.
Art. 1926. “ On the breach of any obligation to do or not to do,, the obligee is entitled either to damages, or, in cases which permit it, to a specific performance of the contract at his option, or he may require ihe dissolution of the contract, and in all these cases damages-may be given where they have accrued according to the rules established in the following section:”
Art. 1927. “In ordinary cases, the breach of such a contract entitles the party aggrieved only to damages, but where this would be an adequate compensation, and the party has the power of performing the contract, he may be condemned to a specific performance by means prescribed in the laws which regulate the practice of the courts.”
In City and Levee Board vs. Railroad Co., 44 An. 67, this court said: “ It is only when no adequate compensation can be made in damages that courts in this State can decree a specific performance of a contract. The decree can not be demanded asa matter of'right. It rests largely upon judicial discretion not arbitrarily exercised, but according to the soundest principles of equity and justice.”
The injunction which issued in this case was adopted as an instru-’ mentality by and through which to enforce the “ specific performance” of defendant’s obligations, and the propriety of its issuance and its perpetuation must be viewed from that standpoint. Specific performance, as we have just seen, is not demandable as a matter of right, and under Art. 1927 it is not granted where the parties have' provided for adequate compensation in case of breach. Such is precisely the condition of the parties to this litigation. They have themselves fixed upon five thousand dollars as being an amount sufficient to compensate plaintiff for a violation during the whole five years to which the contract refers.
If damages had been liquidated in the contract at so much per day, or per month, and plaintiff, at th.e end of two or three months, had sued defendant for the amount of the past due accrued and exigible damages, coupled with an injunction against further continued violation of his obligations, a very different case would *904 have been presented than that which is actually before us. The contract between these parties was entered into on the 13th of July, 1892. The first infraction of the same by defendant is mentioned as having occurred on the 27th of September, 1893, and this suit in which plaintiff sued defendant for five thousand dollars and caused an injunction to issue against him, prohibiting him from engaging further in the business of butchering, was instituted on the 4th of October following — only seven days after the first violation by defendant of his engagement. If plaintiff, after taking out an injunction, had maintained it in force for one or two years, and had then voluntarily dismissed it, or discontinued it, he would still be entitled, under his contract, to a judgment for five thousand dollars, and defendant would be entitled to no credit, either ior the period between the date of the contract and its first infraction, during which time his contract stipulations would have been observed voluntarily by him, nor credit for the enforced observance of those obligations, through the injunction, from the time of the issuing of the injunction up to that of its discontinuance.
We do not think such harsh and unreasonable results should be permitted to be brought about by the courts through a remedy which is discretionary with them in its application. The agreement of the parties in this matter is of no importance. Parties are much more free to make contracts than they are to regulate and stipulate as to the legal remedies. 15 An. 246.
The demand as presented and filed, with the two remedies coupled, was an inequitable one and an entirety, and the injunction should not have been allowed — it could not now be given life to and .legalized ab initio by an offer to discontinue a part of the demand, even had such an offer been made, which it has not. This view of matters relieves us of any attempted classification of the obligation which the parties entered into from examining to see whether there is a difference between the liability of five thousand dollars provided for considered as a “penalty ” and the same liability considered as “ liquidated damages.” And if such ther¿ should be, to distinguish between the effects of the one and those of the other. Our judgment in this case would not be altered by reason of any distinctions of that kind.
Plaintiff informs us, the defendant is now insolvent and' - a judgment against him would serve no useful purpose. The possi *905 bility of defendant’s future insolvency was a matter which should have been foreseen and guarded against by proper security — the plaintiff did not deem this security necessary at the time of the •contract.
The case of Stafford vs. Shortreed, reported in 17 Northwestern. Rep. 756, resembles the present in many of its features. In that case the Supreme Court of Iowa held, that “where a party who sells his business and the good will thereof contracts that he will not carry on the same business at the place of sale, or within a certain distance thereof for three years ‘ under penalty of one hundred dollars,’ and violates this agreement, the only remedy is an action to recover the amount named in the contract, and in such an action an injunction to restrain the continuance of such business, in violation of the contract, can not be granted.”
In that case, as in this, it was contended that the defendant was insolvent. The court said: “ It is to be presumed that the plaintiff made his contract with full knowledge of defendant’s financial standing and ability to discharge his obligations. If he had doubts upon that question he should have required some security to protect himself against any damages which he might sustain by reason of the failure to observe his agreement. As he took the defendant’s promise to pay him one hundred dollars if defendant should violate his .agreement, he can not ask more than the ordinary process of the law to enforce payment. The amount which the defendant agreed to pay is in the nature of stipulated damages. It can not be regarded as a penalty, because the actual damages which plaintiff may sustain by a violation of the agreement must, in the nature of things, be subject of mere conjecture. They can not be established by evidence even approximately. Section 8886 of the Code has no application to .a case like this. It is therein provided that in all cases of breach of contract or other injury where the party injured is entitled to maintain and has brought an action by ordinary proceedings, h© may in the same cause pray and have a writ of injunction against the repetition or continuance of such breach of contract or other injury * * * In this case there can be no repetition or continuance of a breach of the contract, because when the defendant commenced to work at ' blacksmithing at Pottsville he incurred the whole liability, which was to pay plaintiff the one hundred dollars.”
We are of the opinion that the judgment appealed from is correct, -and it is therefore hereby affirmed.