## FEDERAL SIGN SYSTEM v. LEOPOLD ET AL.

(March 4, 1929.  Opinion and Decree.)
(April 1, 1929.  Rehearing Refused.)
(May 21, 1929.  Writ of Certiorari and Review Refused by Supreme Court.)

Sol Weiss and L. H. Yarrut, of New Orleans, attorneys for plaintiff, appellee.

E. A. Parsons and McCaleb and McCaleb, of New Orleans, attorneys for defendants, appellants.

JONES, J.  Plaintiff sued Arthur B. Leopold, as principal and Arnold Falk, as surety for breach of a written contract whereby the plaintiff agreed to install an electric sign reading "Pantages Vaudeville" in front of a theatre, 320 Dauphine Street, for a term of thirty-six (36) months from the date of installation; the sign was to

burn from dark until 11 p. m., for seven days a week; the consideration of said contract was $27.15 per week, payable in advance, and the further sum of $14.00 per month in case of the breach of the agreement.

It claims $27.15 per week from date of last payment, May 28, 1921, until the sign was taken down on November 30, 1921, $716.54, and so-called liquidated damages at $14.00 per month for 115½ weeks, the unexpired term of the contract or $371.00 making a total of $1,087.54.

Leopold, after admitting the contract alleges as follows: That it was changed (without the consent of Arnold Falk, guarantor) on July 28, 1920, by addition of the following written words:

"If the lessee (meaning your respondent) is unable to renew his contract with Alexander Pantages, which expires August 15, 1922, Lessor (Plaintiff) agrees to cancel this contract at no further expense to the lessee (respondent)."

He was unable to renew his contract with Alexander Pantages and owing to depression in theatrical line, had to close the theatre on May 28, 1921, when Pantages' contract with him was cancelled.

During the time said theatre was closed, no sign was used and no electric power; subsequently it was orally agreed, without notice to Falk, that no charge would be exacted while the theatre was closed.

That he paid all amounts due from September 26, 1920, the date service commenced, until May 28, 1921, when the theatre was closed.

On October 23, 1921, the policy of the theatre changed from Pantages Vaudeville to Dramatic Stock, and it became necessary to change the electric sign. With plaintiff's approval respondent caused the said "Pantages Vaudeville" sign to be removed and taken down, and substituted therefor an electric sign reading "Louisiana Theatre," which burned one hour from 7:45 p. m., to 8:45 p. m., nightly until November 30, 1921, when it was removed by plaintiff for nonpayment of rent.

Falk, the surety, avers that his contract of guarantee was breached by two changes made without his consent, the first change being made by the addition of the written words, July 28, 1921, above quoted, and the second by oral agreement.

There was judgment below in favor of plaintiff and against the defendants in solido for $716.54, the amount due from the date of the last payment, to-wit: On May 28, 1921, to November 30, 1921, the date when the sign reading "Louisiana Theatre" was taken down, and for liquidated damages at $14.00 per month, from November 20 to August 15, 1922. Leopold has appealed devolutively and Falk has appealed suspensively.

On the trial of the case plaintiff admitted that the clause quoted above from Leopold's answer had been added to the contract but through error it had been left off the copy sent counsel.

Defendant contends that the contract was changed a second time but in this he is not sustained by the evidence. Burrell, the local manager of plaintiff, testified that various changes were discussed after theatre was closed but agreement could never be reached and his statement is confirmed by an unsigned and undated typewritten document which both parties agree was an attempt to embody their various oral suggestions in a written contract. On the sides of the document are various notes in pencil made by Leopold demanding that price and date be fixed.

Leopold testified that no price had ever been fixed for the changed sign and certainly all must admit that the price to be paid for the article is usually one of the most important elements in a lease contract. If a new oral agreement was ever consummated the record does not show it.

The fact that defendant may not have used his sign for a few months is of no legal consequence. Burrell and Leopold both testified the lighting of the sign was under the control of Leopold. If he failed to take the benefits of the service and the rights he had under the contract that does not lessen his responsibility.

The "liquidated damages" paragraph of the contract reads as follows:

"Upon a breach of this agreement by the Lessee, the Company may remove the sign, wiring and all its other property, and cut off the supply of electricity, in which event the Lessee will pay the Company a sum equivalent to $14.00 Dollars for each unexpired month of the term of the contract, which sum is agreed to be the actual loss suffered by the Company by reason of such breach. Non-payment by the Lessee for rental due under this contract to the company may be considered a breach of this contract."

Defendant contends that liquidated damages, though definitely specified in above paragraph, cannot be recovered, but only actual proven damages are legally obtainable under articles 1934 and 2127 Rev. Civ. Code.

Defendant was to pay at the rate of $27.15 per week four and one-half weeks to the month, a total monthly of $122.00, more or less. If he defaulted, he paid damages at the rate of $14.00 per month, or about 12 per cent of the former rate, a fairly reasonable profit considering the expense of installation.

The greater the duration of use of sign, the less liquidated damages would be due.

The case of Godwin vs. Davidson et al., 163 La. Ann. 804, 112 So. 728, cited by appellant is not in point. There the bond provided a penalty of $5,000.00 for its breach. The contract was almost completely performed. The damages were assessed or fixed in a lump sum, not so much for each day, week or month, or year. Since the contract was partially performed the Court properly held that plaintiff was not entitled to the entire $5,000.00 but would have to prove his damages.

Here the amount defendant had to pay was commensurate with the period of his default and it is certainly reasonable.

Although defendants have proved no change in the contract except the written words limiting Leopold's liability to August 22, 1922, rather than the full 36 months, they claim that the surety was released by this change which they admit was beneficial to the surety, but Leopold saved thereby $140.00 in damages, and the guarantor's liability was reduced.

In Provan vs. Percy, 11 La. Ann. 179, the Supreme Court held that the discharge of the surety under art. 3030 C. C., only took place to the extent that the acts of the creditor have prejudiced recourse to the surety for reimbursement of what he may have to pay.

In Barrow vs. Shields, 13 La. Ann. 63, the Supreme Court said a partial release of the mortgage and privilege by the creditor releases the surety only pro tanto.

The following holdings are affirmed:
Hill & Co. vs. Bourcier, 29 La. Ann. 844;
Stewart vs. Lacoume, 30 La. Ann. 159;

Segari vs. Mazzei, 116 La. 1026, 41 So. 245;

Putnam vs. Live Oak Merc. Co., 122 La. 507, 47 So. 846.

Defendant cites:

Jefferson Railway Co. vs. International Construction Co., 113 La. 413, 37 So. 10;

Insurance Company vs. Randall, 42 La. 260, 7 So. 679;

McGuire vs. Woolridge, 6 Robinson 47.

An examination of these decisions show that the change of the contract in each case caused the surety substantial harm and we do not think that any of them are controlling here, although they contain *obiter dicta* to the effect that a creditor "cannot make any change, though beneficial to the surety, under the penalty of releasing him."

As Civil Code provides in arts. 3061, 3062 and 3063 only certain specific instances in which the surety is released, this defense is not sound on the principle "inclusio unius exclusio alterius."

For above reason the judgment is affirmed.