No. 808.

First Circuit

## SUCCESSION OF PREMEAUX IN RE NORTH AMERICA LAND CO., INC.

(June 30, 1931. Opinion and Decree.)

Pujo, Bell & Hardin, of Lake Charles, attorneys for plaintiff, appellant.

Vance E. Plauche, of Lake Charles, attorney for defendant, appellee.

LeBLANC, J. ·The North America Land Company, Inc., instituted this proceeding by rule against the administrator of the succession of Oda Premeaux, an order having first been obtained directing the latter to show cause why he should not apply to the court for an order to sell the property of the estate in order to pay debts.

Plaintiff in rule alleges that it is a creditor of the succession, being the holder of five promissory notes of the decedent, Oda Premeaux, dated December 15, 1917, and due on the 1st of December of each of the years 1922, 1923, 1924, 1925 and 1926. It is specifically alleged that the said notes represent the balance due on the purchase price of a tract of land which is described as being the E. ½ of the S. W. ¼ of Sec. 35, Tp. 10, S., R. 7 W. and are supported by a vendor's lien and privilege according to a written contract, which, it is averred, is attached, with the said notes, to another suit referred to by number only. In paragraph 2 of the petition, plaintiff alleges further that there is a balance due on the principal, interest, and taxes under the said contract of $1,795.52, on which amount there is further due also 8 per cent interest from March 1, 1930, and 10 per cent attorney's fees. It is noted that the prayer of the petition is that the administrator be ordered to apply to the court for authority to sell the property of the estate, without referring to any particular property.

Inasmuch as the inventory of the property belonging to the succession of Oda Premeaux, which had been taken in April, 1919, showed that the estate consisted only of personal property with the exception of the interest in the contract referred to in the petition of the plaintiff in rule herein, all of the property besides being inventoried as community property, and in view of the fact also that the record shows that all of the personal property had been turned over to the widow of the decedent, and her second husband, according to an account presented by the dative tutor of her minor children, it was a most reasonable thing for the administrator to assume that the only property that plaintiff in rule meant for him to apply for the sale of was the property described in his petition and on which it was alleged there was a vendor's lien and privilege to secure the payment of the balance of the purchase price. The administrator took the position that the contract of which this property was the subject-matter was merely a promise of sale and that the succession had no title thereto. He accordingly answered the rule by averring facts to that effect and showing that an application by him for the sale of the property would be a vain and useless proceeding, as the succession could make no valid and legal transfer thereof.

The lower court sustained the administrator's contentions and rendered judgment recalling the rule and discharging him therefrom. On application for rehearing, the plaintiff argued, as we learn from the opin-

ion of the trial judge, that its rule for an order to sell property did not limit the administrator to any particular property, but referred to all property of the succession, including its rights under the contract with the land company, and that the rule should be made absolute to the extent at least that the administrator be ordered to sell those rights. The lower court, in this opinion on rehearing, held that the rights of the succession under the contract had been forfeited and none could be transferred. It accordingly reinstated its former judgment, and this appeal was taken.

The contract involved in this case was entered into on December 15, 1917. The original party to the agreement with the decedent, Oda Premeaux, was the North America Land & Timber Company, Limited, which later transferred all of its rights thereunder to the present plaintiff in rule, which also became the transferee, by indorsement of the notes described in the petition.

The contract is a lengthy document which in effect is merely a promise of sale. By its terms, the land company, in consideration of the stipulations therein contained, "agreed to sell" to Oda Premeaux the property which is described in detail. Premeaux covenanted and agreed to pay a certain price, so much in cash and to give so many notes with fixed maturities and bearing interest. The contract contains a stipulation as to how the sale shall be made, and specifically provides that "no right, title, or interest whatsoever, is to vest in the said party of the second part (Oda Premeaux) in and to any of the real estate aforesaid, otherwise than as a mere occupant or tenant at will of said party of first part (The Land Company), prior to the passage of an act of sale in manner and form as aforesaid. * * *"

Contracts of the nature of the one herein involved have in some recent cases received the consideration of the Supreme Court which held that they constituted a mere agreement to sell and not a sale. We satisfy ourselves by quoting from one of the latest, Pruyn v. Gay, 159 La. 981, 104 So. 536, 538:

"The language of the contract in question is 'I hereby agree to sell.' It is distinctly understood that this promise is made upon the following conditions:

" 'First that the contemplated purchaser shall pay all taxes and assessments of any kind that may be due on said property before they become delinquent.' 'The failure of said purchaser to make said payments when due shall ipso facto, without demand or putting in default and as a penalty nullify and abrogate this contract.'

"It is clear from this language that the parties did not intend a sale, transferring title to the property, until after the payments had been made in pursuance of the terms of the contract.

"It is also clear that they intended that a deed should be executed after the payments had been made.

"It is immaterial that defendant went into the possession of the property immediately after the execution of the contract and remained in possession.

"While the sale of personal property is complete between the parties by their mere consent, and as to third persons by delivery, yet the case is different as to real estate.

" 'Neither consent, nor delivery, nor payment of price suffice to transfer the ownership; there must be a deed translative of the title.' Trichel v. Home Ins. Co., 155 La. 462, 99 So. 403.

"The court also said in the Trichel case:

" 'Our conclusion is that any agreement for the sale of real estate, which is not intended to be the final writing between the parties, but on the contrary, to be followed by another and final deed, is a mere promise of sale, and not a sale, and does not transfer the title to said property; unless it clearly appear that the parties contemplated that the new deed should be only

a confirmation of the first, and not indispensable for the transfer of title.'

"See, also, Campbell v. Richmond Insurance Co., 156 La. 455, 100 So. 679.

"The contract in this case is clearly a mere agreement to sell and not a sale."

There are no disputed facts in the present case, and it is therefore conceded that there never had been any formal act of sale as contemplated under the contract executed between the parties thereto. We therefore conclude, as did the Supreme Court in the cases cited, that there existed between them only a promise of sale under which title to the property was never transferred. If Oda Premeaux never had title to the property, it is obvious that his succession could transfer none should it attempt to sell it in order to pay debts.

But counsel for plaintiff in rule now stresses before us the contention that the succession can, on proper order of court, be made to sell the rights which it has in the contract, and that the administrator should be made to do so. The latter on the other hand urges that the succession has no longer any rights under the contract, the same having been forfeited at the option of the land company, and that a sale of such rights would transfer nothing to the purchaser. These contentions lead us to a consideration of the forfeiture clause in the contract, a mere reading of which is sufficient to satisfy us, without much comment, of its sweeping provisions, and leaves but little doubt as to the result produced by the failure or default of the one who had agreed to make the payments as stipulated in the contract to do so punctually. The clause is too long to be here quoted in its entirety, but suffice it to say that, by its terms, time and punctuality are material and essential ingredients of the contract, and, in case of the failure of party of the second part (Oda Premeaux) to make the payments under the strict terms and times stipulated, the contract is to become utterly null and void, and all of his rights thereunder shall cease, and the right of possession and all equitable and lawful interest in the property shall immediately and ipso facto revert to and revest in the party of the first part (the land company) without any declaration of any forfeiture or act of re-entry.

It is not disputed that there was such default on the part of Premeaux, and, if the forfeiture clause in the contract means anything, it would seem that the plaintiff in rule has been reinvested with all rights of possession and of interests of any other kind in the property, and in addition thereto is entitled to all payments of every kind whatsoever made by Premeaux, including those for taxes, improvements placed on the property and all others, as a liquidated penalty. Can it be said now, moreover, to have a claim as a creditor for the amount of the notes that remain unpaid? We think not. It would hardly be just and equitable to hold that it owned the property, could collect and retain the penalties, and over and above that be entitled to the purchase price too.

But counsel for plaintiff in rule vigorously contend that there has been a waiver of the forfeiture clause by their acceptance of delayed payments in the past, and that they are yet entitled to the right of specific performance which is granted to either party to a contract of this kind under article 2462 of the Civil Code. In considering this point, we have to again refer to the case of Pruyn v. Gay, supra, which we note went to the Supreme Court on a writ of review from this court. See 2 La. App. 787.

In that case, the vendor was seeking to have the contract between himself and the party who had agreed to purchase the property canceled, on the ground that it had been forfeited by the prospective buyer who was always in arrears in making his payments. As a defense, the latter urged that there had been a waiver of the forfeiture clause by the vendor who had accepted payments before and after they were due, without complaint. The lower court held with the plaintiff and ordered the cancellation of the contract and its erasure from the public records. That judgment was at first affirmed by this court, but on rehearing, it, as well as the original judgment, were both reversed, and it was held that the vendor's action in receiving payments in sums less than the amounts stipulated, and made long after the expiration of the time fixed for payment, must be regarded as an absolute waiver and renunciation of the stipulations of the contract concerning its forfeiture. On review of the case, the Supreme Court, however, reversed the judgment of this court, and held, according to the syllabus, that an agreement to sell land, which stipulated that delay by the purchaser in making payments should ipso facto and as a penalty abrogate the contract, in which especially there was a provision that time was of its essence, was legal and enforceable, in view of Civil Code, articles 1901, 1911 and 2117. The following quotation is from the body of the opinion:

"The contract in this case is not reprobated by law. Article 1911 of the Civil Code expressly provides that:
" 'The debtor may be put in default in three different ways: By the terms of the contract, by the act of the creditor, or by the operation of law:
" '1. By the terms of the contract, when it specifically provides that the party, failing to comply, shall be deemed to be in default by the mere act of his failure.'

"The present contract so provides. It also declares that:
" 'The failure of said purchaser to make said payments when due shall ipso facto, without demand or putting in default, and as a penalty nullify and abrogate this contract.'
" 'A penal clause is a secondary obligation, entered into for the purpose of enforcing the performance of a primary obligation.' R. C. C. art. 2117.

"The primary obligation assumed by the defendant in the present contract was the payment, when falling due, of each installment of the purchase price.

"Time is expressly made the essence of the contract. Necessarily, the idea or intention that defendant might obtain a further delay for the performance of his obligation to make the payments is excluded.
" 'Agreements legally entered into have the effect of laws on those who have formed them. They cannot be revoked, unless by mutual consent of the parties, or for causes acknowledged by law. They must be performed with good faith.' R. C. C. art. 1901."

In the case before us, it is true that the situation, in relation to the parties to the contract, is reversed, and we have the vendor urging the waiver of the forfeiture clause, and seeking the enforcement of the contract. But is not the effect of the clause the same regardless of which party to the contract wishes to avail himself of it?

Counsel, however, pursues the matter yet further and invokes article 2124 of the Civil Code as giving plaintiff in rule the right to enforce performance of the contract. The article reads as follows:

"The creditor, instead of exacting the penalty stipulated from the debtor, who is in default, may sue for the execution of the principal obligation."

Under its provisions alternative remedies are granted to a creditor against a debtor who is in default, and who is bound by a penal clause. There seems to be contem-

plated a situation, however, where the penalty is not yet paid, as the alternative remedy of. suing for the execution of the principal obligation is given "instead of exacting the penalty stipulated." Being alternative rights, clearly the creditor could not be entitled to both the penalty and the execution of the principal obligation.

Let us, however, for the sake of the argument, give to both Civil Code articles 2462 and 2124 that interpretation the most favorable to the plaintiff in rule, and the question still remains: Is this the proper form of proceeding which its purported rights are to be enforced under them? We must bear in mind that this proceeding is one instituted by a rule on the part of one who alleges himself to be a creditor of a succession to have the administrator sell its property in order to pay debts. By the very terms of the contract on which it relies, plaintiff's status as a creditor is very doubtful. It would seem, therefore, that the rights of the parties under the agreement could hardly be established in the form in which the issue is now presented. Plaintiff in rule may have some remedy, but we are of the opinion that it cannot get the relief it is seeking in this proceeding, and can only obtain it in a suit properly brought against the succession.

We believe that the lower court was correct in dismissing the present proceeding and in discharging the administrator from the rule, and its judgment is therefore affirmed.

ELLIOTT, J., dissents from that part of the opinion which holds that there had been no waiver of the forfeiture clause in the contract of sale between the North America Land & Timber Company, Limited, and Oda Premeaux.