We are not prepared to say that the length of time is unreasonable.

Our Civil Code provides, under the clauses dealing with suspension of prescription, that prescription runs against all persons except those included in some exceptions established by law, Article 3521, Revised Civil Code. Persons not included by law in the exceptions are not entitled to the suspension of the prescription running against them.

For the reasons assigned, the judgment is affirmed at appellant's cost.

**49 So.2d 5**

**PENNINGTON v. DREWS.**

No. 39160.

Dec. 9, 1949.

On Rehearing Nov. 6, 1950.

Watson, Blanche, Fridge, Wilson & Posner, Baton Rouge, and Davidson & Davidson, Lafayette, for defendant and appellant.

Fred G. Benton, Victor A. Sachse, Parish Atty., R. Gordon Kean, Jr., Asst. Parish Atty., all of Baton Rouge, for appellee.

McCALEB, Justice.

This is the third time this matter has been brought here for review. It is a suit for enforcement of a contract by injunction, coupled with a demand for the recovery of penalties allegedly due in consequence of defendant's breach. The facts which gave rise to the litigation are not seriously disputed and we find them to be as follows:

The defendant, Drews, is the inventor of a certain electrical instrument, known as an "Atomiscope" designed for use in geophysical work as an aid in determining the presence of structure or fault favorable for the accumulation of oil and gas. Plaintiff is an experienced oil operator, buying and selling oil leases and mineral rights for his individual account and upon a brokerage basis and promoting and developing oil properties for himself and others. On October 7th 1940, plaintiff and defendant made a written contract whereby the former employed the latter as his associate in an enterprise for the exploration of oil, gas and other minerals by use of the atomiscope and was given an exclusive right to utilize the device and defendant's services in its operation for a period of four months in consideration of payment to defendant of $300 per month. Plaintiff was also granted an option to renew the contract for another four months at its expiration, under the same terms and conditions, by giving defendant notice in writing and, at the expiration of the second four month period, he was given the privilege of extending the agreement for a period of three years upon paying to defendant $400 per month. The contract further provided that the atomiscope would remain the property of defendant and be kept and operated by him personally; that, however, defendant was obligated never to purchase for his own

account, and without plaintiff's consent, leases in any area that had been surveyed by use of the atomiscope; that he would never lend, sell, give away or otherwise demonstrate the instrument to any other person without procuring plaintiff's assent in writing; that any new discovery or improvement of the instrument would accrue to the benefit of both parties; that defendant should not divulge the location of any survey to any other person and that he would always remain faithful and diligent and be ready and willing at all times to do survey or exploration work with the atomiscope upon the call of plaintiff. In addition, defendant agreed that, should he refuse or delay a work call for any reason other than sickness, then he would be liable for the sum of $25 for each day he failed to work following the summons.

On February 6th 1941, the parties entered into a supplemental agreement altering the original in certain respects. It provided that, for the ten months following February 7th 1941, defendant's monthly salary would be $200; that, on January 7th 1942, plaintiff would have the option of extending the contract for an additional twelve months by notifying defendant in writing and payment to him of a salary of $350 per month and that, in like manner, the contract could be extended on the 7th day of January of each year for 12 successive months each "not exceeding ten (10) years from and after January 7th 1942". It was further stipulated that defendant was to be given

a definite percentage of the net profits of the proposed operations under certain specified conditions.

It appears from the record that the contract was fully and satisfactorily performed until 1944 at which time (January 6th 1944) plaintiff exercised, in writing, his option to extend the agreement. On January 10th 1944, defendant acknowledged plaintiff's letter and refused to continue the contract, giving ill health as an excuse. Thereafter, from January through May 1944, plaintiff wrote defendant on a number of occasions, urging him to respect his contractual obligations. Following defendant's failure to respond to these entreaties, plaintiff filed the instant suit in which he sought specific performance of the contract, by the issuance of a mandatory as well as a prohibitory injunction, together with a demand for penalties.

In conformity with plaintiff's prayer, a temporary restraining order was issued prohibiting defendant from violating his negative obligations under the contract and a rule nisi issued for him to show cause why relief should not be granted. On the return day, defendant appeared and excepted to the petition on the ground that it did not state a cause of action. This plea was maintained by the lower court and the suit dismissed. It was because of the dismissal of the action and plaintiff's showing of immediate irreparable injury that we granted remedial writs in the case and, later, perpetuated them upon a further consideration

of the matter. See 209 La. 1, 24 So.2d 156. That decision settled the law of the case insofar as the validity of the contract is concerned and also sustained plaintiff's right to a prohibitory injunction upon making due proof of his allegations.

Upon the remand of the case to the District Court, defendant filed supplemental pleadings in which it was contended that, since plaintiff was given the optional right to continue the contract in force for ten years, the agreement was not binding upon him as Article 167 of the Civil Code prohibits persons from hiring out their services for a term in excess of five years. After the parties entered into a stipulation in which most of the material facts of plaintiff's petition were admitted, the Judge ruled that defendant's plea was well founded and dismissed the suit. Again alleging irreparable injury, plaintiff secured the issuance of remedial writs by this court and, after a hearing, we found that Article 167 of the Code was inapplicable because the contract was not one solely for defendant's personal services but was really a venture contemplating the combined efforts of the parties in exploration for minerals, for their joint benefit, by use of the atomiscope. See 212 La. 544, 33 So.2d 63. The writs were accordingly made peremptory and the matter remanded for a second time for trial of the merits.

After the case reached the District Court, plaintiff filed a supplemental petition in

which he increased his claim for penalties to the sum of $35,975 and defendant filed an answer in which he reiterated the same contentions urged on the exceptions and further denied all liability on the contract. He specially pleaded, in the alternative, that, should the court find that the contract was binding, plaintiff was not entitled to recover as he had breached it in various respects (particularly set forth). Further in the alternative, defendant averred that, in the event the court sustained the agreement, he was entitled to have a full accounting from plaintiff for his proportionate interest in mineral leases, overriding royalties, working interests, etc. as provided in the contract. And again in the alternative, he declared that, in the event the contract is ruled to be enforceable by injunction, he was entitled to recover in reconvention the sum of $17,850 representing unpaid salary of $350 per month from April 6th 1948, during the remainder of the term of the contract, together with 25% of the net profits derived by plaintiff in accordance with its provisions all to be disclosed by a proper accounting.

After a hearing, the judge found for the plaintiff and against defendant, issuing a prohibitory injunction restraining defendant from doing any of the things that he contracted not to do and further gave judgment against him for penalties in the sum of $34,475.

In the appeal from the adverse judgment, counsel for defendant raise three points for our consideration:

(1) That plaintiff is not entitled to injunctive relief because he has failed to show that he is ready, able and willing to perform his obligations under the contract in their entirety,

(2) That, even if the contract is enforceable, defendant is entitled to recover, under his reconventional demand, the monthly cash consideration provided in the contract, and

(3) That, in any event, plaintiff is not entitled to a judgment for penalties.

We shall discuss these matters in their respective order.

The first contention of counsel is based upon their appreciation of plaintiff's testimony. They say that he has shown by his evidence that he would not employ the defendant in atomiscope work even if his services were available as he admits " * * * that I have lost considerable faith in Mr. Drews". And, adverting to the fundamental doctrine that one cannot require enforcement of a contract where he is unwilling or unable to discharge his own undertaking, Seeger v. Seeger, 169 La. 611, 125 So. 732, counsel submit that the judge erred in granting the injunction.

The contention cannot be sustained as an examination of all of plaintiff's evidence makes it manifest that he has been not only willing but, if anything, eager to comply with his part of the engagement. Hence, since the predicate is not well founded, the rule relied on is inapplicable.

The next proposition is that, since the court is enforcing the contract by issuance of an injunction, defendant is entitled to recover in reconvention the salary payable thereunder.

This contention would have undeniable force if the court had ordered a specific performance of the contract by issuance of a mandatory injunction. But that sort of relief was impossible inasmuch as there was no way in which a specific performance of the affirmative stipulations for the rendition of personal services could be enforced. Hence, in cases of breach of contract, such as this, a partial or limited enforcement may only be obtained through the issuance of a prohibitory injunction to prevent a violation of negative covenants. See 28 Am.Jur. Sections 77 and 78, pages 270–273. Here, the monthly stipend was payable in consideration of defendant's performance of all the obligations of the contract. It cannot be divided. Therefore, since plaintiff is unable to have a specific performance of affirmative covenants, i. e., explorations and geophysical surveys by use of the atomiscope, defendant is not entitled to recover the monthly salary. After all, if defendant would have the consideration of the contract, it lies entirely within his power to obtain it by tendering his services in compliance with the affirmative covenants.

Counsel finally maintain that the judge erred in assessing penalties of $34,475, which allegedly have accrued since January 7th 1944, for the reason that the penalty clause in the contract applies only in instances where defendant has retarded performance of work by failing or refusing to respond after he had been called to the job by plaintiff. It is maintained that, since plaintiff's own evidence shows that he has not called upon defendant to perform any specified service or work since the latter part of 1943, none of the penalties claimed are recoverable. The penalty clause of the contract reads:

"The said T. J. Drews recognizes that in work of this character that time element is an important factor and that under this contract the said C. B. Pennington will have a running overhead expense, over and above the salary paid to the said T. J. Drews, therefore, it is agreed that should the said T. J. Drews not accept or for any reason, other than herein provided, *refuse or delay the work call* or for any reason refuse to work with or take the Atomiscope or instruments out *after he has been called,* then, and in that event the said C. B. Pennington shall have the right to charge the said T. J. Drews' account, with the right to deduct the same from his salary, and all rights to collect, with each and every day that he does not work *after he has been called,* the sum of Twenty-five and no/100 ($25.00) Dollars per day; and, in addition thereto the said T. J. Drews shall be held respon-

sible for any loss or damage the said C. B. Pennington might sustain through his refusal, neglect or otherwise to accept the work call, personal sickness or personal injury whereby the said T. J. Drews is incapable to work is hereby excusable." (Italics ours.)

Section 8 of Chapter 4 of Title IV of Book III of the Civil Code treats of obligations containing penal clauses. Article 2117 defines the penal clause as a secondary obligation "entered into for the purpose of enforcing the performance of a primary obligation"; it envisages two distinct contracts, one to do or give, which is the principal object, and the other to give or do something if the principal object is not carried into effect. Article 2118. Since the penalty is stipulated to enforce the principal obligation, it is not incurred if there is lawful excuse for non-performance of the principal agreement. Article 2120. The creditor may, of course, sue for the execution of the principal obligation instead of exacting the penalty, Article 2124, but "He cannot demand the principal and the penalty together, unless the latter be stipulated for the mere delay." See Article 2125 which further defines a penal clause as "the compensation for the damages which the creditor sustains by the non-execution of the principal obligation."

In other words, the penal clause, under our law, is synonymous with liquidated damages. This has been firmly established in the jurisprudence—for, as stated

in Elkhardt Bridge & Iron Co. v. Board of Commissioners, Port of New Orleans, 12 Orleans App. 192, and quoted with approval by this court in Stewart-McGhee Const. Co. v. Caddo Parish School Board, 165 La. 200, 115 So. 458, 461: "Article 2125, C.C., shows that 'liquidated damages' and *penalties* are one and the same thing; and may be stipulated either for the *non-execution* of the contract or for mere *delay* in the excution thereof." (Italics by the Court.) See also J. G. Wagner Co. v. City of Monroe, 52 La.Ann. 2132, 28 So. 229; Federal Sign System v. Leopold, 10 La.App. 709, 120 So. 898 and Heeb v. Codifer & Bonnabel, 162 La. 139, 110 So. 178.

When this case was before us for decision on the exception of no right or cause of action, 209 La. 1, 24 So.2d 156, one of the points urged by the defendant was that an injunction would not lie because, by insertion of the penal clause in the contract, the parties had provided for liquidated damages in case of breach and that, therefore, plaintiff was not suffering irreparable injury as he had an adequate remedy at law. In rejecting this proposition, we found that the penal clause did not represent the damage which plaintiff might sustain in the event of defendant's breach of the principal obligation but that "The $25 per day provision is merely an incidental item and is not coextensive with the broad basis of interest which exists in favor of plaintiff under the contract". 209 La. at page 23, 24 So.2d at page 163. Stated in another

way, our holding was that the penal clause, although liquidated damages, was to be regarded as damages covering mere delay in the execution of specific work by defendant after he had been called to the job by plaintiff as the contract, when considered as a whole, revealed that the parties did not contemplate that this penalty would include, or compensate for, all damages suffered by plaintiff in the event of defendant's breach.

■ It is clear that our previous ruling on the nature of the penalty must be viewed as stated above for, unless the penalty be deemed to apply solely for delay, plaintiff would not be entitled to an enforcement by injunction of the principal obligation and at the same time claim the penalty. Article 2125 of the Civil Code; Jackson & Manson v. Hoffman, 31 La.Ann. 97; Succession of Premaux, 17 La.App. 360, 135 So. 680 and Solomon v. Diefenthal, 46 La. Ann. 897, 15 So. 183.

In a supplemental brief, counsel for plaintiff argues that, even if the penalty clause be viewed as being limited to delay damages, recovery was nonetheless proper because his client testified that he called defendant by telephone, on a number of occasions, to come to see him and discuss various matters, particularly with reference to a tentative proposal from one of the large oil companies to do some exploration work for it.

■■ This postulation is not supported by the facts. The record makes it perfectly plain that there was no specific job or work

being done at the time the contract was terminated by defendant's refusal to recognize plaintiff's right or option to extend the agreement for the year 1944. The penalty provided in the contract, as we view it, does not apply unless there is specific work which is to be immediately done or is actually in progress at the time of the refusal or delay by defendant. Here, the evidence of plaintiff on cross-examination shows beyond any doubt that there was no job in esse at the time of defendant's default—for plaintiff testified that, in December 1943, defendant told him that he would "like to get out of the geophysical business" and when asked about any offers, he admits he had none stating "I had no tentative offer, the Freeport Sulphur Company wanted to know if we could entertain the thought to do some work in Florida."

We conclude that the penalties claimed by plaintiff are not recoverable.

The judgment appealed from is annulled and reversed insofar as it casts defendant for the sum of $34,475 with interest thereon and it is now ordered that plaintiff's claim for penalties be rejected; in all other respects, the judgment is affirmed. Plaintiff is to pay the costs of this appeal; all other costs are to be borne by defendant.

FOURNET, C. J., dissents from that part of the decree reversing the judgment of the lower court.

PONDER, J., concurs.

HAWTHORNE, J., takes no part.

MOISE, J., dissents in part and concurs in part.

### On Rehearing.

LE BLANC, Justice.

The rehearing granted in this case was limited to a reconsideration of the holding by the Court on the penalty clause in the contract.

We have gone over the matter again and a majority of the Court is convinced that the original opinion correctly disposed of all the contentions presented under that clause and that the decree properly rejected the plaintiff's demand for the penalties claimed. Anything we might add to the reasons given for denying them would be in the nature of repetition which we deem wholly unnecessary.

For the reasons assigned it is ordered that the original decree heretofore handed down be and the same is hereby re-instated and made the final decree of this Court.

FOURNET, C. J., dissents.

PONDER, J., dissents.

MOISE, J., dissents with written reasons.

MOISE, Justice (dissenting).

The original decision portrays an analytical condensation of the facts of record. From the predicate adopted the conclusion reached is logical. The difference of opinion here is not of fact but the application of the facts to the law. It is true that there is one of the Articles of the Code which treats with obligations to do or not to do and this in itself possibly caused confusion. Article 1926, R.C.C.

My analysis of the record is that the obligation in the contract between Pennington and Drews is primarily an obligation not to do, and in substantiation of that, we quote from the statement of facts found on page 2 of the original opinion [La.Sup. 49 So.2d 7]:

"Defendant was obligated never to purchase for his own account, and without plaintiff's consent, leases in any area that had been surveyed by use of the atomiscope; that he would never lend, sell, give away or otherwise demonstrate the instrument to any other person without procuring plaintiff's assent in writing; * * *.

It was because of the above provisions, in part, that plaintiff put into the proposition something like $57,000.00. Plaintiff was, therefore, the benefactor, as far as this contract has gone, and the defendant the beneficiary.

From the language above quoted, the contract is clearly the obligation not to do; being such, we, therefore, seek light for

the application of facts to the law from the controlling Articles of the Revised Civil Code. Article 1929 reads:

"If the obligation be not to do, the obligee may also demand that the obligor be restrained from doing anything in contravention of it, in cases where he proves an attempt to do the act covenanted against."

This article gives the right to enjoin and in order to get the complete meaning of the law, we would have to go to Aritcle 1928 of the Revised Civil Code, which reads:

"The obligee may require that anything which has been done in violation of a contract, may be undone, if the nature of the cause will permit, and that things be restored to the situation in which they were before the act complained of was done, and the court may order this to be effected by its officers, or authorize the injured party to do it himself at the expense of the other, and *may also add damages, if the justice of the case require it.*"

On a contract to do, this Article, in all probability, has no application, but on the contract not to do, damages may be added in addition to the injunction imposed, if the justice of the cause requires it.

The original opinion very ably argues that the penalty clause is liquidated damages and when the district court applied these liquidated damages to the penalty clause, it was error to foreclose that court's judgment and limit the relief to be given to the plaintiff only to the injunction

sought; since the record shows that this defendant has removed his person and his property (atomiscope) to another State, the relief granted merely of an injunction is such that the resulting general relief will be that of perpetual darkness and a state of judicial limbo.